AMERICAN PNEUMATIC TOOL CO. et al. v. PHILADELPHIA
PNEUMATIC TOOL CO. et al.

(Circuit Court, S. D. New York.   July 23, 1903.)

No. 7,760.

1. PATENTS—INFRINGEMENT.
Where defendant's alleged infringing article is constructed in accordance with a later patent, there is an equal presumption of patentability in favor of each patent.

2. SAME.
Noninterchangeability of the parts of two machines tends strongly to negative infringement.

3. SAME—PNUEMATIC DRILLING TOOLS.
The Bates patent, No. 364,081, for a pneumatic drilling tool (claim 3), is not a pioneer invention, and is entitled to only a narrow construction, in view of the prior art.   As so construed, it is not infringed by the tool of the Keller patent, No. 647,415.

¶ 1. See Patents, vol. 38, Cent. Dig. § 35.

In Equity. Suit for infringement of letters patent No. 364,081, for a pneumatic drilling tool, granted to A. J. Bates May 31, 1887. On final hearing.

Kerr, Page & Cooper, for complainants.

Walter S. McCorkle (E. Hayward Fairbanks and Hector T. Fenton, of counsel), for defendants.

HAZEL, District Judge. This is a suit in equity, brought to enjoin the use of a pneumatic drilling tool alleged by the complainant to be an infringement of United States letters patent No. 364,081, issued to A. J. Bates May 31, 1887. Defendants, by their answer, deny that complainant had title to the Bates patent. The uncontroverted evidence, however, tends to show complainant's ownership of the patent. No other person or corporation appears to have a beneficial interest in it. The patent has nine claims, but claim 3 only is here involved. It reads as follows:

"(3) In the pneumatic drilling tool described, and in combination with the case having an inlet and exhaust port, the cylinder, D, having a piston chamber and a valve chamber arranged separate from each other, and connected by means of ports and air passages, the piston, B, and valve, J, for controlling said piston through the medium of said ports and air passages, substantially as and for the purpose set forth."

The answer of the defendants sets up two different defenses, to wit, noninfringement and want of patentability and novelty in views of the prior art. The latter defense, it was stated on argument, is urged only in case claim 3 is given the broad construction insisted upon by the complainant. It is not inappropriate to state at the outset that the Bates patent in suit has several times been considered and its scope variously construed in different suits by the Circuit Court and Circuit Court of Appeals for this circuit. A most clear and intelligible description of the Bates patent and the scope of claim 3 may be found in the opinion of Judge Shipman, speaking for the Circuit Court of Appeals, and in those of Judge Wheeler, and Judge Townsend for the Circuit Court, at final hearing, reported in American Pneumatic Tool Company v. Fisher (C. C.) 69 Fed. 331, affirmed on appeal, 71 Fed. 525, 18 C. C. A. 235, and American Pneumatic Tool Company v. Bigelow (C. C.) 100 Fed. 467, respectively. Claim 3 was given a broad construction in the Fisher Case, and subsequently in the Bigelow Case its breadth was palpably narrowed. In the Fisher Case the tool under consideration by Judge Townsend, who sustained the Bates patent, was manufactured by the defendant under the Drawbaugh patent, No. 472,495. Afterwards in the Bigelow Case, Judge Townsend, considering the validity of the Bates patent, and its scope as settled by the Fisher Case, granted a preliminary injunction, which, however, was reversed on appeal. 77 Fed. 988, 23 C. C. A. 603. The Circuit Court of Appeals held infringement doubtful because the function of the piston in the Boyer tool is to open and close the live air and exhaust ports at the lower end of the cylinder, while in the Bates tool the valve directly controls the piston at each end; or, to state it differently, in the tool of the defendant there were no air passages or ports leading from the valve by which the return move-

ment of the piston was created, the piston itself operating to open and close the ports or passages at the lower end of the cylinder. Importance is attached to the claim of complainant in each of the above cases that the valve and piston must be absolutely separated from each other, and to the feature which permits the valve to operate in such a manner as to cause the upward stroke of the piston or hammer by means of ports or air passages leading from the valve chamber to the lower end of the piston chamber. In this manner live air was intermittently allowed into the piston chamber, and exhausted therefrom. The opinion of the court by Judge Shipman, limiting the scope of claim 3, which had previously been accorded a broad interpretation by the Circuit Court of Appeals, must have weight in the consideration of this controversy. In effect it so narrowed claim 3 as to cause the subsequent dismissal of the bill at final hearing. The exhaustive opinion of Judge Townsend, limiting and defining claim 3, put the dismissal of the bill on the ground that in the alleged infringing tool "the valve directly controlled the admission of air to the piston at one end of the piston chamber only, and not at the other end, the admission at the lower end being governed by the piston itself." In that respect the infringing tool which was manufactured by Bigelow under the Joseph Boyer patent, No. 549,102, was held to be functionally different, as the complainant's valve controlled the air at both ends of the piston. In the case at bar an application for injunction pendente lite was denied by Judge Lacombe on account of new matter as to the prior art. Thus it appears from the foregoing narration of the precarious Bates patent litigation that the involved claim in one form or another has been examined and considered five times in this circuit.

Referring now to the pneumatic tools here involved, defendant's portable pneumatic tool alleged to be an infringement of the Bates patent is manufactured under the Keller patent, No. 647,415, granted April 10, 1900, and is precisely similar to the tool described in the specification, except that a change in the throttle valve has been made to strengthen the handle of the tool. The Keller tool is extensively used for various kinds of heavy caulking and riveting in metals; and its utility has not only been generally recognized, but as a hand tool it has in the last few years gone far toward displacing the use of the hammer and other ordinary hand implements in shops and other manufactories where the art of metal working and drilling in stone, and especially chipping and riveting in metals, is made an industry. The justification for again asserting the defense of nonpatentability and novelty is based upon the claim of newly discovered evidence, which it is believed will disclose that the initial litigation broadly construing claim 3, was an erroneous conception of the state of the art, and based upon evidence tending to establish that Bates was an independent inventor. This, however, seems not to have been the true status of the Bates patent. Much importance is attached by the defendant to the British patent of Darlington, No. 3,664, and United States patents to Sargeant, Nos. 295,682, 308,524, and 308,525. None of these patents were before the court in the Fisher Case. Many other patents have been urged upon this hearing to limit the claim in suit, but, as such patents were duly considered and analyzed in the prior cases, it is

unnecessary to again refer to them. The Darlington and Sargeant patents are interposed in the case at bar to limit the broad and liberal claim contended for by the complainant.

Defendant also contends that the Bates file wrapper, not heretofore considered in any previous litigation, indisputably limits the scope accorded to the Bates invention in the Fisher suit. The Darlington and Sargeant patents were given full consideration by Judge Townsend at a period of time soon after the Circuit Court of Appeals decided the Fisher suit, and when there could scarcely be any misunderstanding as to the full import of his decision, and no appeal was taken. His reference to them was not obiter. They afforded a basis for his decision. The evidence before the court was substantially the same as that presented here. The limiting devices found in the Darlington and Sargeant tools, although rock-drilling tools, are, nevertheless, of a class analogous in the art to the hand tool under consideration. It is not contended that there was any novelty in the size, shape, or speed of the Bates tool. The functions which the valve and piston performed accomplished nothing new, and were known to exist in an analogous art. Credit is due Bates for having improved the pneumatic drilling tool, as he adapted his invention to a tool readily moved by hand. But his invention is not that of a pioneer, and therefore must rest "upon the novelty of the means which he contrived to embody the conception, and to carry it into practical application." Dunbar v. Eastern Elevating Co., 81 Fed. 201, 26 C. C. A. 330. Moreover, it must not be overlooked that the defendant is manufacturing its tool, which has gone into general use, under a subsequent patent, to the issuance of which no objection was made by the Patent Office. The cases hold that, where a defendant constructs his invention in accordance with a patent held by him, the presumptions of patentability are balanced, and prior and subsequent patentees stand in equilibrio. Bates v. Keith (C. C.) 82 Fed. 102; Boyden Power-Brake Co. v. Westinghouse Air-Brake Co., 70 Fed. 816, 17 C. C. A. 430. It is substantially admitted that not a single Bates tool, such as is described by the drawings and specification, has been made. No inference, however, of inoperativeness or incapacity, is to be drawn from that fact, for the record abundantly shows that the device was capable of successful use as a hand tool. Attention is called to the different character of the uses to which the tool is put, and it is asserted that its size required a movable support, and therefore it is deduced by the defendant that the Bates tool was not a hand tool. But the evidence and prior adjudications construing the patent dispose of this contention; and I am well satisfied that the Bates invention as a hand tool is capable of successfully drilling or chipping upon granite, stone, and metal. It is not adapted to perform the work of a common rock drill. When in operation the chisel attached to the tool, although disconnected from the piston, may be reciprocated from one to three thousand times per minute. Structural differences in a rock drill will not permit a reciprocation of the tool or drill at that high speed. Moreover, in a stationary rock drill the chisel is reciprocated with the piston, and thrust to the work. In the Bates tool the piston, which is subject to numerous blows, is held to the work. This is a feature quite neces-

sary in a portable hand tool. Notwithstanding these structural differences between a rock drill and hand drilling tool, it was practically conceded by complainant's expert witness Benjamin that the Darlington device is substantially similar to that of complainant.

I am well satisfied from the evidence and from a careful reading of the decision in the Circuit Court of Appeals limiting and defining the scope of the patent and from the decision of Judge Townsend in the Bigelow Case, that claim 3 is entitled to a narrow interpretation only. An examination of the Bates patent, in view of the extended detailed description, found in the opinions of the court to which attention has been called, requires but a brief restatement here of the general parts and functions of the Bates tool. The mechanical functions of the ports or passages or channel ways which are located between the cylinder and the outer inclosing case are to transmit motion and energy between movable portions or mechanical metal parts in the manner as hereinafter stated. The inner case or cylinder is bored lengthwise to provide a chamber or enough space for a movable piston or hammer. The cylinder is also bored crossways at its upper part to provide a chamber or sufficient space for a direct-acting balanced valve. The valve is spool-shaped. The spaces referred to—more properly called the valves and piston chambers—are divided or separated by a diaphragm. The movable parts in the cylinder are the valve above described and the piston or hammer, which are contained in the chamber specially arranged as above stated. The velocity of the valve and reciprocating piston or hammer is governed and controlled by means of compressed air projected against the upper side or rear end of the piston. The piston has through its length a round opening, wherein is firmly secured a movable striker. The striker has an annular flange wedged or fitting tight into the lower end of the piston, and is riveted down at its upper end. From the lower end the striker extends into a hub of suitable space to permit the movement of the striker, which is operated by the movement of the piston. The piston has two annular grooves, which provide space for an inlet and exhaust of the motive fluid. The cylinder, which slides telescopic fashion into the inclosing case or sleeve, has ports, grooves, or channel ways for inlet and exhaust motive fluid, and its surface is a medium in the control of the piston at each end. According to the complainant, the Keller patent comes within the limitations subsequently placed upon the earliest construction of claim 3 by the Circuit Court of Appeals in the Fisher Case and by Judge Townsend at final hearing. The defendant substantially contends, in reply to the reasons urged by the complainant why infringement by the Bates patent should be decreed, that the patents of Darlington and Sargeant sufficiently negative the novelty, or at least the scope, of claim 3, and, that, therefore, it ought to be held that defendant's device does not come within a fair arrangement of equivalents; and, further, that material structural differences exist in defendant's device, which justify differentiating it from that of complainant. The argument based upon this summary of the issues presented, has covered a wide field. An examination of the expert evidence on both sides, together with the drawings, specifications, and exhibits, satisfies me that the principle of operation

of the valve and the piston in defendant's device practically attains the same result, but not by the employment of equivalent means, in view of the narrow scope of the claim upon which infringement depends. The defendant's valve and piston device is described as follows: The valve is located in a separate box or valve chamber; not as in complainant's device, integral to the cylinder or piston chamber, but in a direct line with the piston. The center line of the piston is also the center line of the valve. The movement of the valve is vertical, and in a direct line with the movement of the piston. Thus it will be seen that the Keller valve chamber is contained in a separate piece of metal, and is removable from its place at the upper end of the piston chamber by unscrewing the cap which holds the valve box in place close to the piston chamber. The Keller piston is a solid piece of metal, having a groove which is alternately in connection with live-air pressure near the forward end of the stroke. Both the complainant's and defendant's valves operate to cause the upward and downward movement of the piston by means of the air passages and ports leading from the valve chamber to the piston chamber. Upon this subject Mr. Benjamin, expert witness for the complainant, testified that "the valve in both tools controls the application of the air to both sides of the piston or reciprocation hammer." This broad statement does not appear to be seriously controverted by the other side. It is insisted, however— and correctly, I think—that the structural dissimilarities of the valve and piston produce a different mode of direct operation. Furthermore, the evidence tends to establish the impossibility of using the defendant's valve and piston in a separated valve and piston, which were described in the patent in suit, without completely changing complainant's tool. Le Gendre, witness for complainant, substantially swore that a substitution of the parts would render both devices inoperative. It is held that noninterchangeability of parts in a machine tends strongly to negative infringement. Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 Sup. Ct. 310, 38 L. Ed. 121; Pittsburg Meter Co. v. Pittsburg Supply Co., 109 Fed. 644, 48 C. C. A. 580. Neither is the fact that the alleged infringing device may effect the same result always determinative of infringement. Water-Meter Co. v. Desper, 101 U. S. 332, 25 L. Ed. 1024; Westinghouse v. Power-Brake Co., 170 U. S. 537, 18 Sup. Ct. 707, 42 L. Ed. 1136. In the latter case the Supreme Court said:

"But, after all, even if the patent for a machine be a pioneer, the alleged infringer must have done something more than reach the same result. He must have reached it by substantially the same or similar means, or the rule that the function of a machine cannot be patented is of no practical value."

Although the operations of defendant's valve and piston practically result in the valve controlling each end of the piston, such valvular control, however, seems to be a functional result, caused by the valve and piston arrangement, which, as already stated, is not strictly the equivalent of complainant's device. This conclusion renders it unnecessary to pass upon any other point presented upon the hearing. The claim of the Bates patent involved in suit is not infringed by defendant's device.

Let the bill be dismissed.