## MELLING v. GORDON et al.

(Court of Appeals of District of Columbia. Submitted March 10, 1925. Decided April 6, 1925.)

No. 1727.

1. **Patents ☞112(3)—Question of patentability in light of prior art is not before Court of Appeals on appeal in interference proceeding.**

Question of patentability in light of prior art is not before Court of Appeals on appeal in interference proceeding.

2. **Patents ☞49—Evidence as to cost, sales, and efficiency of patent held to show operativeness.**

Evidence as to cost of production and sales of machines, consisting of lathe for turning out irregular forms. specifically the cam shafts of automobile engines, and evidence that such machines turned out 80 to 90 per cent. of commercially usable shafts, held to show operativeness.

3. **Patents ☞47—Superiority of subsequent invention held not to deprive owners of prior invention from right to make counts of interference.**

That invention possessed superiority in wider range of utility and in better work held insufficient to deprive holders of prior patent from right to make counts of interference.

Appeal from Commissioner of Patents.

Interference proceeding between Herman W. Melling and Charles Gordon and Alfred

W. Redlin. From a decision awarding priority to Gordon and Redlin, Melling appeals. Affirmed.

F. L. Chappell and O. A. Earl, both of Kalamazoo, Mich., for appellant.

W. G. Henderson, of Washington, D. C., and E. H. Bottum and J. W. Michael, both of Milwaukee, Wis., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. This appeal is from the decision of the Commissioner of Patents, awarding priority of invention to appellees, Gordon and Redlin. The issue is in 3 counts, described in the opinion of the Examiner in Chief as follows:

"The subject-matter of the interference is a lathe for turning irregular forms, specifically the cam shafts of automobile engines. In the embodiment of invention disclosed in the Melling application involved in interference, the cutter is carried by a swinging lever mounted on a reciprocating carriage, movable in a plant transverse to the longitudinal axis of the work holder. This movement is controlled by a pattern cam, which is a replica of the cam to be formed by the cutter, both as to size and outline. The movement of the cutter-carrying lever is controlled by an additional cam. In the Gordon and Redlin machine, disclosed in the application involved in interference, the main cutter-carrying member is a swinging cam-controlled lever. The cam which moves the lever towards the work is not a replica of the cam to be formed. The movement of the cutter carrier proper is controlled by a second cam-actuated lever having a segmental rack engaging teeth on the cutter carrier and moving the cutter in an arc as the formation of the cam progresses."

The testimony discloses that there is no case of priority of invention here presented. Melling admits that he took no steps toward making the invention until after he had seen, at the factory of the Jackson Motor Shaft Company, in Jackson, Mich., a Gordon and Redlin machine, which was constructed in accordance with the disclosure of their application involved in this interference. Indeed, Melling admits that all dates named in his preliminary statement are subsequent to the time when he saw the Gordon and Redlin machine.

Melling, however, moved to dissolve the interference on two grounds: First, that Gordon and Redlin had no right to make the counts of the interference; second, on the ground that the issue is unpatentable in view of the prior art. On these issues Melling was defeated in all the tribunals of the Patent Office.

[1] We will not stop here to consider the question of patentability in the light of the prior art. That matter is not for our consideration in an interference proceeding. This narrows the case, therefore, to the question of the right of Gordon and Redlin to make the counts of the interference. The issue is stated in three counts. Count 1 was formulated by the Examiner, and based upon a claim originally appearing in the Melling application. Counts 2 and 3 are claims originally made by Gordon and Redlin.

[2] On the question of inoperativeness the evidence discloses that Gordon and Redlin manufactured and sold quite a number of machines in accordance with the disclosure of their application. The price of the machines was $5,000 each. The expense of producing the machines, and the fact that a number of machines were sold and put into operation by various automobile manufacturers, is significant as bearing upon the question of operativeness.

The record discloses that Gordon and Redlin encountered difficulty in making their machines operate satisfactorily from a commercial standpoint, in that only from 80 to 90 per cent. of the cam shafts turned out were commercially usable. It further appears that there was excessive waste or scrap in the manufacture of the machines. The scrap, as one witness testified, amounted to from 10 to 12 per cent., and another witness estimated as high as 20 per cent. By scrap was meant that this percentage of shafts was not turned out with sufficient accuracy to be used commercially. We, however, agree with the Board of Examiners in Chief that, "if the Gordon and Redlin machine would turn out from 80 to 90 per cent. of commercially usable cam shafts, we think this fact indicates strongly that the machine was operative, although possibly not commercially practicable on the type of cams being turned. There is a clearly recognized distinction between inoperativeness and commercial impracticability." This defect, however, was largely overcome by a second machine constructed by Gordon and Redlin.

[3] Melling's whole case resolves itself into an attempt to secure an award of priority on the alleged superiority of his invention over that of Gordon and Redlin, but neither the fact that Melling may be able to

manufacture shafts with less waste than Gordon and Redlin, or that his machine may have a wider range of utility, are sufficient to deprive Gordon and Redlin of making the counts of the interference. Neither wider range of utility nor better work are sufficient to deprive Gordon and Redlin of their right to the claims in issue.

The tribunals of the Patent Office were unanimous in sustaining the operativeness of the Gordon and Redlin machine, and with their reasoning and conclusions we fully agree.

The decision of the Commissioner of Patents is affirmed.