## GORDON FORM LATHE CO. v. WALCOTT MACHINE CO.

District Court, E. D. Michigan, S. D. July 22, 1927.

### No. 1644.

**1. Patents ⟨⟩328—1,542,803, held valid, unanticipated, operative, and not infringed.**

Gordon and Redlin patent, No. 1,542,803, for lathe for forming nongeometrical forms, particularly cam shafts of automobile engines, held valid, not anticipated, operative, and not infringed.

**2. Patents ⟨⟩234—Mere similarity of function is not conclusive on question of infringement.**

Mere similarity of function is not conclusive on the question of infringement, even in the case of pioneer patents.

**3. Patents ⟨⟩234—That claims in issue of patent may be read on device alleged to infringe patent is not conclusive of infringement.**

That claims in issue of patent may be read on a device alleged to infringe the patent is not conclusive of infringement, where the principle of the two machines is different and the means used are not the same.

**4. Patents ⟨⟩235(1)—Purpose of patent law is not to deprive industry of superior device, using different means and conforming to different principle, merely because containing elements of former patented machine.**

It is not the intent of the patent law to deprive industry of a superior device, where it conforms to a different principle and uses different means for performing the same function, even though it contains elements bearing a resemblance to a prior patented machine.

**5. Patents ⟨⟩64—What infringes, anticipates, if found in prior art.**

That which infringes a patented device anticipates, if found in the prior art.

In Equity. Patent infringement suit by the Gordon Form Lathe Company against the Walcott Machine Company. Bill dismissed.

John W. Michael, of Milwaukee, Wis., and F. O. Richey, of Cleveland, Ohio, for plaintiff.

J. L. Stackpole, of Boston, Mass., Otis A. Earl, of Kalmazoo, Mich., and H. L. Kirkpatrick, of Boston, Mass., for defendant.

20 F.(2d)—43

SIMONS, District Judge. This is a suit brought for alleged infringement of patent No. 1,542,803, granted June 16, 1925, to the Gordon Form Lathe Company, on the application of Charles Gordon and Alfred W. Redlin, filed June 19, 1920, for a lathe. The subject of the invention may be more specifically referred to as a lathe designed for the forming and turning of irregular or nongeometrical forms, particularly the cam shafts of automobile engines. The patent in suit has twice been before the courts. Melling v. Gordon et al., 55 App. D. C. 278, 4 F.(2d) 945; Melling v. Gordon Form Lathe Company, 14 F.(2d) 437. In neither of the cases referred to was the question of patentability in the light of the prior art considered, and in neither case was the question of infringement in issue. The first case was before the Court of Appeals of the District of Columbia upon appeal from the Commissioner of Patents on interference proceedings between Melling, on the one hand, and Gordon and Redlin, on the other. The second case was before the District Court of the Northern District of Ohio, and was an action to compel the issue of a patent to Melling, the plaintiff therein, under section 4915, R. S. (Compiled Statutes, § 9460). This is the first action for infringement of the patent referred to by the use of the Melling apparatus, and substantially all of the applicable defenses known to the patent law are here brought forward. The patent is challenged for want of patentable novelty, anticipation by the prior art, the inoperativeness of the patented device, and infringement is denied.

The patent in suit covers a lathe for turning irregular forms, specifically the cam shafts of automobile engines. It is a multiple or gang lathe for cutting or turning a number of cams and eccentrics on a shaft at the same time. It is sufficient to describe one unit of this multiple tool. The implement comprises a work holder, a tool carrier, which moves transversely to the axial line of the work holder, and a cutting tool, mounted and angularly movable on the carrier, automatic means for moving the carrier toward and from the work, and means for varying the angular relation of the tool to the carrier and work, to maintain proper cutting and clearance angles of the tool to work of noncircular contour. The movement of the tool carrier transversely to the work is controlled by irregular shaped cams. To keep the cutting tool always in normal relation to the work, the tool is swung upon its point as an axis, and this movement is

also controlled by a properly shaped cam. Neither cam—that is, neither the cam controlling the transverse movement of the tool holder, nor the cam controlling the swinging of the cutting tool—is a replica cam; that is, one conforming in size and shape to the contour of the cam to be cut.

[1] Prior to the Gordon and Redlin invention, irregular shaped cams of automobile shafts were ground. This was an expensive and dangerous process. In challenging the patentable novelty of the Gordon and Redlin machine, the defendant has brought before the court the result of a very full research into the prior art, and has presented a very able and thorough discussion and analysis both of the grinding art on irregularly shaped surfaces, and of the cutting or turning art as disclosed in prior patents. It would extend this opinion to unwarrantable length to discuss all of the earlier practices and patents. It is sufficient to say that the earlier devices disclosed were in the main designed to cut concentric or geometrical forms, and that the problem of cutting or turning a nongeometrical form, such as a pear-shaped cam, involved problems not present in the grinding art.

The two most pertinent citations of the prior art dealing with cutting or turning tools, are the Montreuil patent, No. 701,217, and the Brophy patent, No. 649,905. In the case of the former patent a model was submitted to the court for the purpose of showing that, with some modifications, the device disclosed by the patent could be made to do the work of the patent in suit. More persuasive, however, was the actual setting up of the Brophy machine in court, and the cutting of pear-shaped cams by means of it. The demonstration was impressive, but a careful analysis both of the Montreuil model and the Brophy machine demonstrates that these devices, in order to be operative as an anticipation of the patent in suit, were reorganized by defendant's expert, Professor Cooley, with an ingenuity that itself indicated inventive thought. Secondly, neither Brophy nor Montreuil, in their patents, disclosed a machine for cutting nongeometric forms, and the evidence is conclusive that no one in the industry conceived of either of these machines as solving the problem presented prior to the demonstrations made in this suit and the arguments advanced in the prior litigation upon the patents. Neither the Brophy nor Montreuil implements are in anticipation of the patent in suit, and neither negative the existence of patentable novelty in the Gordon and Redlin device.

As to the operativeness of the Gordon machine, it was fully considered in the interference proceedings in the Patent Office and by the Court of Appeals of the District of Columbia, and by Judge Westenhaver in the cases heretofore cited. Decision was uniformly in favor of the plaintiff on this issue. The testimony here varies in no material way on the question of operativeness from the records in previous hearings. I accept the conclusions of the prior tribunals in this respect.

We, come, then, to the question of infringement. Melling, a mechanic of considerable ingenuity and experience, was called in to examine a Gordon and Redlin lathe in operation at the plant of the Jackson Motor Shaft Company, which was not performing as expected. He concluded, upon examination, that it was wrong in principle, mode of operation, and mechanism, and that it could not be made to work properly. Being familiar with grinding machines, and with the old Blanchard lathe, he set about to design a cam-cutting machine which should be built upon principles that to him seemed sound; he designed a cam-cutting lathe and attempted to secure a patent on his device. With its patentability we are not here concerned, the only issue being whether or not it infringed the plaintiff's patent. Melling started with the principle of the Blanchard lathe, a device very old in the art of wood cutting, but concerning which there is some indication that it was used to some extent in cutting metal. Following the principle of the Blanchard lathe, Melling controlled the transverse movement of his cutting tool to the work by a replica cam, as shown in the Blanchard lathe. In this respect his device, of course, differed from that disclosed in the patent in suit.

With regard to the cutting tool, his first conception was that of a milling cutter, a multiple tool such as the circular saw of the Blanchard lathe. He soon discovered that he could get the same result from a single tool by mounting it upon a center remote from its point. The machine devised by Melling has proved successful, and the evidence discloses that it has met with widespread acceptance in the automobile industry. The functions of the Melling machine and that disclosed by the patent are the same. The issue presented is as to whether the machines are so identical in principle that the Melling machine infringes upon the Gordon and Redlin device.

[2] I have given the matter very careful and extended consideration. I am convinced that

Gordon and Redlin were pioneers in the art of turning nongeometric forms, and that the claims of their invention should be given great liberality of construction. It has been held, however, by the highest authority, that mere similarity of function is not conclusive on the question of infringement, even in the case of a pioneer patent. Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 18 S. Ct. 707, 42 L. Ed. 1136. I am equally convinced that Melling constructed his machine upon an entirely different principle from that of the patent in suit, and that the means used for performing the same function, except such means as are common to all lathes, were different. He controlled the transverse movement of his tool with the replica cam of the Blanchard lathe; he reciprocated the cutting tool, and kept it normal to the work by swinging it upon a center remote from its point; his tool transscribed an orbital path, rather than a straight path to and from the work, as disclosed in an analysis of the patented device; and such elements contained in the Melling combination as are claimed to be equivalent to elements in the patent are not such when put to the test of interchangeability. Auto Hone Co. v. Hall Cylinder Hone Co. (D. C.) 3 F.(2d) 479; Pittsburg Meter Co. v. Pittsburg Supply Co. (C. C. A.) 109 F. 644; American, etc., Co. v. Philadelphia, etc., Co. (C. C.) 123 F. 891; Boyer v. Cleveland Pneumatic Tool Co. (C. C. A.) 185 F. 808.

[3] It is contended that the claims in issue of the Gordon and Redlin patent can be read upon the Melling device. This is not conclusive of infringement, where the principle of the two machines is different, and the means used are not the same. Westinghouse v. Boyden Power Brake Co., supra, and cases cited therein.

[4] The record is conclusive upon the fact that the Melling machine has come into wide commercial use, that it does the work for which the patented implement was designed much more accurately and satisfactorily than the Gordon and Redlin machine, and it would seem to me broadly that it was never the intent or purpose of the patent law to deprive the industry of the superior device, when, as here, the latter conforms to a different principle and uses different means for performing the same function, even though there are elements in each combination that bear some resemblance.

[5] The final consideration which supports my conclusion is that Melling, if he borrowed from anything other than the Blanchard lathe, borrowed the orbital moving tool swinging upon a center remote from its point, from the Montreuil or from the Brophy patent, and that, if the claims of the patent in suit are to be construed so broadly as to cover such elements in the Melling device as is claimed, it would be necessary to find such claims of the patent in suit invalid, because anticipated, under the rule that what infringes, anticipates, if found in the prior art.

I conclude, therefore, that the claims of the patent in suit, in so far as sued upon, are valid, but that they are not infringed by the Melling machine. In consequence, the bill will be dismissed, with costs to the defendant.