## FORD MOTOR CO. v. GORDON FORM LATHE CO.

### Nos. 7363, 7364.

Circuit Court of Appeals, Sixth Circuit.

Jan. 12, 1937.

Drury W. Cooper, of New York City (I. Joseph Farley and Bodman, Longley, Bogle, Middleton & Farley, all of Detroit, Mich., on the brief), for appellant and cross-appellee.

F. O. Richey, of Cleveland, Ohio (John W. Michael, of Milwaukee, Wis., F. M. Bosworth, of Cleveland, Ohio, Lecher, Michael, Whyte & Spohn, of Milwaukee, Wis., and Richey & Watts, of Cleveland, Ohio, on the brief), for appellee and cross-appellant.

Before HICKS and SIMONS, Circuit Judges, and RAYMOND, District Judge.

RAYMOND, District Judge.

The bill charged defendant,[1] Ford Motor Company, with infringing claims 1, 2, 12, 23, 24, 28 to 30, 33, 34, and 38 to 42 of letters patent No. 1,542,803, issued June 16, 1925, to Gordon Form Lathe Company, upon application filed July 16, 1920, by Charles Gordon and Alfred W. Redlin. One of defendant's machines, known as the Walcott or Melling machine, was charged to infringe all of the claims enumerated, while another machine, known as the Pioch machine, was alleged to infringe claims 29 and 30. The defenses pleaded were invalidity and noninfringement. Defendant has appealed from the holding of the trial court that all of the claims involved were valid and that all were infringed by the Walcott machine, and that claims 29 and 30 were infringed by the Pioch machine. The cross-appeal relates to paragraph 5 of the decree which denies plaintiff's application for accounting of defendant's profits and of plaintiff's damages prior to June 13, 1929, and to paragraph 6, which denies application for increased damages under 35 U.S.C. §§ 67 and 70 (35 U.S.C.A. §§ 67, 70).

Reference to prior litigation discloses the background of the present suit. The patent sued upon was involved in interference proceedings which terminated in the Court of Appeals of the District of Columbia, Melling v. Gordon et al., 55 App.D.C. 278, 4 F.(2d) 945; in proceedings under Rev.St. § 4915 (35 U.S.C.A. § 63) to compel issuance of patent to plaintiff therein, Melling v. Gordon Form Lathe Co., 14 F.(2d) 437 (D.C.Ohio); and in an appeal to this court, Gordon Form Lathe Co. v. Walcott Mach. Co., 32 F.(2d) 55, which reviewed a decision of the District Court reported in 20 F.(2d) 673 (D.C. Mich.), which case on appeal determined the scope and validity of all the claims here involved excepting claims 12, 23, 24, and 38. These prior decisions render unnecessary detailed description of the Gordon and Walcott machines or restatement of the nature of the patent claims heretofore adjudicated. The Walcott machine here charged to infringe is the same as the one under consideration in the suit which was on appeal in this court. The principal issue relative thereto is whether the present record discloses additional prior art which were known in the court below.

---

[1] For brevity the parties are referred to herein as plaintiff and defendant as they

so limits the scope of the patent claims in suit that the Walcott machine should now be held not to infringe.

For reasons similar to those indicated in the former opinion of this court, it is thought unnecessary to discuss claims 12, 23, 24 and 38.

Even brief discussion of all the asserted new prior art in the present record would unduly extend this opinion. Full consideration thereof brings conviction of its insufficiency to warrant modification of our previous conclusion that the patentees were pioneers in disclosing means for oscillating the tool in synchronism with its reciprocatory movements and the revolution of the work by the use of an appropriately shaped cam, moveable frame, and bell crank lever tool support for use in cutting nongeometric forms and that the Walcott machine is an infringement. Upon the present record, the Blanchard lathe and the Westinghouse machine are most relied upon. The first was fully discussed in our opinion in the former case, and it suffices to say that in the view of the court there is still nothing to justify interpretation of that patent as disclosing a tool which is tilted to maintain it in proper cutting position during the cutting of a nongeometric form. The Westinghouse machine relied upon was built and used in 1910. Westinghouse did not tilt the tool to maintain it in proper cutting position relative to the work. The record is clear that the product of the machine was far from perfect and that, notwithstanding the demand for a cam turning machine, its use was abandoned after cutting a comparatively small number of shafts.

The decree of the lower court relating to the Walcott machine is affirmed so far as it relates to findings of validity and infringement of all claims relied upon excepting claims 12, 23, 24, and 38.

 The Pioch machine alleged to infringe claims 29 and 30 has not been before this court. It was designed in 1929 by an employee of defendant soon after the decision of this court holding the Walcott machine to infringe. Its use was to cut the pear shaped cams which are a part of the camshaft and which raise and lower the valves of the cylinders of an automobile engine. Because of the sharper points of the cams as they had for many years been used in defendant's engine, plaintiff was unable with its machine, after efforts extending over many months, to accomplish more than a very moderate degree of success. Due to the necessary rapid change of position of the tool relative to the work piece as the tool passed from the lower to the upper side of the pointed end of the cam, a cut or gouge was frequently left on the lower side of the completed cam and an excess of material upon the upper side which resulted in a very considerable percentage of rejection, rendering it of dubious practical value in defendant's plant. Because of this inefficiency the Gordon machine was rejected by defendant after a long period of experimentation and the Walcott machine was substituted. Defendant used the Walcott machine until the decision of this court already referred to, whereupon the Pioch machine was developed and substituted. The issue involved in this branch of the case is whether the Pioch machine appropriated the mechanical principles disclosed by claims 29 and 30. They read:

"29. In a structure of the class described, the combination of a tool support, a tool mounted on said support for swinging movement, a pattern cam corresponding to the shape of the cam to be cut for controlling said support, and means for swinging said tool whereby its cutting position relative to the work is maintained as the work revolves.

"30. In a structure of the class described, the combination of a tool support, a tool mounted on said support for swinging movement, a pattern cam for the cam to be cut, said pattern cam being adapted to control said support, and means for swinging said tool in such wise as to maintain the same in proper cutting position relative to the work as the latter revolves."

In the Gordon Form Lathe Company suit, 32 F.(2d) 55, 58, this court stated: "the precise inventive step of Gordon and Redlin would seem to lie in combining with the means for producing reciprocatory movement of the tool, old in the art, the means for controlling the oscillatory movement of such tool by a separate and specially designed cam, spring, and bell crank lever, in such organization that the means for both reciprocatory and oscillating movement, working in synchronism with each other and with the rotation of the work, could cut a cam, crank cheek, or other non-geometric form."

Whatever novelty exists in the combination of elements set forth in the claims relied upon resides in the "means" clause

described as the last element of each claim, and this, under well-settled authority, must be limited to the element in the combination as expressed in the specifications. An inventor cannot by the mere use of the word "means" appropriate any and all kinds of mechanism or devices which may perform the specified function, or any other mechanism or device than that which is described in the patent or which is its mechanical equivalent. See Bettendorf Co. v. Ohio Steel Foundry Co., 56 F.(2d) 777 (C.C.A.6); Davis Sewing Machine Co. v. New Departure Mfg. Co., 217 F. 775, 782 (C.C.A.6); Portland Gold Mining Co. v. Hermann, 160 F. 91, 99 (C.C.A.8); R. M. Hollingshead Co. v. Bassick Mfg. Co., 73 F.(2d) 543 (C.C.A.6).

The Pioch machine is a milling machine and not a lathe as in Walcott. The cutting action results from the rotation of a milling cutter having twelve sharp edges or cutting teeth. The cutter is rotated with great rapidity during the milling operation. The work piece makes but a single revolution during the entire cutting operation, which consumes approximately forty seconds. The cutter is secured to the end of a shaft which is rotated by means of gears. This shaft is mounted for rotation in a tool carrying head mounted in a housing for reciprocal up and down movement. The housing is pivoted upon a shaft. The entire housing is swung across the contour of the work piece by the joint action of a cam groove formed in the side face of a cam and a roller which projects laterally from a projecting arm of the housing. Movement of the cutter towards and away from the axis of rotation of the work piece is under the control of the peripheral face of the cam, while the up and down motion of the cutter is controlled by a lever which at one end is provided with a roller that engages with the peripheral face of a cam. The twelve teeth on the cutter remain in substantially the same plane throughout the cutting operation. These teeth are built solidly into the cutting tool and there is no movement which changes their cutting position relative to the work, the only apparent exception being a sidewise motion which is given to the tool to cause it to cut the entire width of the work piece. There is no substantial difference in the angle at which any of the cutting edges of the teeth contact with the work piece. The slight tilting of the tool which results from the swinging of the tool head is on an arc of such radius that it produces no material effect on the cutting action of the tool. It is apparent from the record and the design of the machine itself that the swinging motion is not for the purpose of maintaining the tool in "proper cutting position relative to the work as the latter revolves," within the meaning of the claims being considered. The slight tilting in the Pioch machine is not comparable to the tilt of the Gordon tool, which has for its sole purpose the maintenance of the tool in proper cutting position relative to the work. The cutting edges of the milling tool of Pioch remain fixed relative to the axis of rotation thereof. The swinging action is not of any effect whatsoever on changing the angle of the teeth of the milling cutter to the work presented to it, but is for the purpose of causing the narrower tool (necessitated by the number of cams to be cut simultaneously) to traverse the entire surface of the work to remove excess stock.

The record establishes that, while the Gordon machine was designed to cut cams and other nongeometric forms, it did not and could not, upon a sharp pointed cam, swing the cutting tool with sufficient speed and precision to maintain it in proper cutting position on the portions immediately above and below the point, nor could it be so reorganized as to accomplish the result while using a single cutting tool which tilted upon its point upon a rapidly revolving work piece. Pioch, by substitution of a milling cutter with multiple cutting points applied to a slowly revolving work piece, accomplished the desired result during one revolution of the work piece. The court is unable to find mechanical equivalency with Gordon in this operation. It appears from the record that, had it not been for the closeness of the cams on the camshaft of the Ford engines that were being produced when the Pioch machine was designed, a larger milling cutter could have been employed which would have rendered unnecessary any movement of the tool other than vertical. The Gordon machine is a lathe with a single point tool which cuts a narrow shaving at each rotation of the work, the work piece being rotated many times with great rapidity before the work is completed.

To accord to claims 29 and 30 the broad interpretation of the word "means" necessary to include the Pioch machine would

be to grant a monopoly upon the functions of the Gordon machine and would preclude not only every conceivable combination which would produce the results accomplished by it but also results not possible of accomplishment thereby. No infringement of claims 29 and 30 by the Pioch machine appears and the decree below should be modified accordingly.

Concerning the cross-appeal which challenges paragraphs 5 and 6 of the decree, it is our view, upon the authority of Wine Railway Appliance Co. v. Enterprise Railway Equipment Co., 297 U.S. 387, 56 S.Ct. 528, 80 L.Ed. 736, and because of the apparent incompleteness of the record upon the issues involved, that all questions relating to the accounting should be postponed until after the return of the master's report. These paragraphs should therefore be stricken from the interlocutory decree appealed from.

The case will be remanded for further proceedings in conformity with this opinion. No costs will be awarded on this appeal.