**TRABON ENGINEERING CORPORATION**
**v. DIRKES et al.**
No. 9358.

Circuit Court of Appeals, Sixth Circuit.
June 4, 1943.

F. O. Richey, of Cleveland, Ohio (F. O. Richey, H. F. McNenny, and Richey & Watts, all of Cleveland, Ohio, on the brief), for appellant.

Lacey Laughlin, of Detroit, Mich. (Barnes, Kisselle, Laughlin & Raisch and Lacy Laughlin, all of Detroit, Mich., on the brief), for appellees.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

SIMONS, Circuit Judge.

Involved in the present infringement suit is the Hillis reissue patent No. 21,236 for a "divisional feeder" designed to deliver measured quantities of lubricants to each of a number of outlets leading to bearings to be lubricated. The original patent to Hillis was No. 2,027,171, issued January 7, 1936, on an application filed January 26, 1934. The reissue was granted October 17, 1939, upon an application filed August 20, 1936. The issues here presented relate solely to validity. The defendants had counterclaimed on a patent to Dirkes No. 2,146,424, and charged infringement thereof by the appellant, but the court held both patents in suit invalid and the counterclaimants have not appealed.

The Hillis structure is incapable of precise description without detailed reference to models and drawings. It will be sufficient, however, for our purposes, to refer to it in the language of the Examiner in Interference (No. 72,609) as comprising "a liquid dividing and measuring device designed for use in a lubricant supply line which successively will receive lubricant from the line in measured amounts and discharge it through various conduits and outlets to various bearings, as the bearings of an automobile chassis, which require intermittent lubrication. The measuring device consists of a member having two cylindrical cavities and reciprocatory plungers in the cavities which serve both as pumps for the measured quantities of lubricant and as valves for the passage of the pumped lubricant to the conduits leading to the bearings." A typical claim is printed in the margin.[1]

The defense of invalidity was grounded principally upon delay in seeking reissue and the insufficiency of the oath in support of the application therefor, anticipation by the French patent to Vincent, No. 702,682, and because a device responding to the claims was offered for sale more than two years before the patent thereon was applied for, constituting it invalid under the provisions of 35 U.S.C.A. § 31. Hillis was held to be invalid upon the second and third ground without discussion of the validity of the reissue or the sufficiency of its application.

The applicant's oath in seeking reissue, recited that his attorneys drafted and accepted claims not commensurate with the invention because they were unable to make broad claims which were regarded as complete by the examiner, the latter seeming to desire a complete description of the device in each claim. In Union Switch & Signal Co. v. Louisville Frog, Switch & Signal Co., 6 Cir., 73 F. 2d 550, we held an oath insufficient which failed to recite what constituted the inadvertence, accident, or mistake, or how it arose. In the oath presently considered, the ground for the mistake is set forth and facts are disclosed which reasonably support the claim of error on the part of applicant's attorneys. We are not presented with a situation such as existed in Firestone Tire & Rubber Co. v. U. S. Rubber Co., 6 Cir., 79 F.2d 948, where we concluded there could be no chance for misunderstanding in regard to the breadth

---

[1] "1. Liquid dividing means comprising a casing having a fluid inlet and a plurality of fluid outlet passages, a pair of cylinders, ports therein and passages interconnecting said cylinder ports and said inlet and outlet passages, and a reciprocatory piston in each cylinder actuated by the incoming fluid at one end of the cylinder and ejecting a measured· quantity of fluid from the opposite end of the cylinder through a cylinder port and an interconnecting passage into the other cylinder, said pistons being alternately actuated, each piston when stationary constituting a valve cooperating with said ports and passages to control and direct both the admission and ejection of fluid to and from the other cylinder and causing the fluid received from the opposite end of one cylinder to be directly discharged out of an associated casing outlet passage under the inlet pressure."

of the invention when the inventor acted as his own lawyer. The reissue is not invalid for insufficiency of application or supporting oath. Nor was there an unreasonable delay in seeking reissue, as in Roos Co. v. McMillan, 6 Cir., 64 F.2d 568, since no intervening rights arose. American Automotoneer Co. v. Porter, 6 Cir., 232 F. 456.

The sole prior art reference now urged in support of the contention that the claims of Hillis were anticipated, is the Vincent (French) patent and the specification which Vincent incorporated in 1931 in an application for a British patent. The application for the British patent was abandoned and no patent ever issued thereon. Its publication in 1933 was subsequent to the Hillis invention which the record shows to have been in commercial use and on sale in March, 1932. Vincent is clearly a paper patent. There is no evidence whatsoever of its commercial exploitation, and in its complicated arrangement of pistons, cylinders, spring-controlled ball valves, it appears upon the record to be clear that it is inoperative without substantial modification,—an inference that gains some support from the abandonment of the Vincent British application.

 We have no doubt that paper patents which precisely disclose the purpose, means, and mechanism for accomplishing the end of a patent in suit, or which may be adapted for that purpose by obvious and common mechanical expedients, may be regarded as anticipatory in that they disclose lack of novelty in an assailed invention. Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 423, 22 S.Ct. 698, 46 L.Ed. 968. But an organization that was neither conceived nor disclosed by the prior inventor, nor adapted by obvious or well-known mechanical expedients, will not convert a prior patent into an anticipation. Topliff v. Topliff, 145 U.S. 156, 12 S.Ct. 825, 36 L.Ed. 658; Gordon Form Lathe Co. v. Walcott Mach. Co., 6 Cir., 32 F.2d 55. The fact that a prior art device, even though adaptable, was not in fact adapted, strongly indicates that the changes were not obvious and involve more than mechanical skill. Potts & Co. v. Creager, 155 U.S. 597, 15 S.Ct. 194, 39 L.Ed. 275; Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527.

The Vincent patent discloses a structure wherein the lubricant, when ejected by reciprocation of the piston in the cylinder, is forced into a central reservoir instead of directly to the bearing. It is then withdrawn by suction resulting from the movement of the pistons and eventually discharged into the bearings through spring-controlled ball valves. In Hillis, as the lubricant enters one end of the cylinder that at the other end is ejected directly to the bearing. Vincent, in effect, is a combination of two separate mechanisms, one acting as a motor, the other operating as a pump. In Hillis, the central pumping device of Vincent is absent. In addition, Hillis apparently achieves a wholly new and useful result in that if any bearing is so clogged that lubricant cannot be forced into it, the device will automatically stop and so warn the operator that all bearings cannot be reached. This the Vincent device would not do. Vincent is, in all likelihood, inoperative if all the pistons are on the same side at the start of the operation. Such situation is immaterial in Hillis. A distinction seems to be fairly established that Hillis may be made to operate on only two cylinders while Vincent is wholly inoperative on an even number of cylinders without substantial modification. There is no commercial history to the Vincent structure, while Hillis and the infringing machine of Dirkes have had a substantial degree of success. The counterclaim leaves no doubt of infringement by Dirkes, if Hillis be valid.

To suggest even theoretically the operability of the Vincent patent requires substantial changes therein to eliminate spring valves, ducts leading to the reservoir, and the reservoir itself. It involves changes in diameter of plungers, a reversal of the movement of the lubricant, and some revision in the successive action of the pistons made necessary by other modifications. There is no demonstration, however, that even when so adapted Vincent would become a practical machine, and particularly no demonstration that the changes would have suggested themselves to those skilled in the art prior to the disclosure of the Hillis invention. In Gordon Form Lathe Co. v. Walcott Mach. Co., supra, there was a dramatic demonstration in open court that the alleged anticipatory lathe of Brophy could grind the non-geometric form for which

the Gordon and Redlin invention was designed. No one in the industry had, however, conceived the machine to be capable of such an operation, and both in the trial court, D.C.E.D.Mich., 20 F.2d 673, 675, and here, it was thought that the Brophy machine could not be regarded as anticipatory even though after the disclosure of the patent in suit it could be so reorganized as to accomplish the result achieved by the invention. In Firestone Tire & Rubber Co. v. U. S. Rubber Co., supra, we likewise held modifications of prior art patents impermissible to invalidate a patent on the ground of anticipation, applying the principle of Topliff v. Topliff, supra.

The District Judge was of the opinion that when Hillis made his invention in the summer of 1931, mechanics skilled in the art of hydraulics knew that fluids could be measured by piston displacement in cylinders, and that pistons could be reciprocated by delivering fluids under pressure at opposite ends of the cylinders alternately, and that even without the disclosures of Vincent it would not require the exercise of inventive genius to design a mechanism such as that of the patent in suit. The problem, as we see it, was not so simple. Lubrication by piston displacement was, of course, old, but to provide for measured lubrication through multiple outlets from a single pressure source by a series of reciprocating pistons operating in predetermined sequence so as to insure operability notwithstanding initial placement of pistons in their cylinders, and all so cooperating that failure of lubrication through any outlet because of its clogging would stall the entire machine and so apprize the operator of the trouble therein, was, we think, an inventive achievement of merit and entitled the inventor to a patent.

■ We are not unmindful of the high standards set in recent years by the Supreme Court as a test of the inventive quality. The Court of Appeals of the Second Circuit [Perkins v. Endicott Johnson Corp., 128 F.2d 208, 218] designates it "a doctrinal trend" which it is our "duty, cautiously to be sure, to follow, not to resist." We heed the admonition to caution as to acquiescence. A patent, granted by the Patent Office, over references identical with those here urged in chal-

lenge, which has successfully emerged from interference proceedings, both before the Examiner in Interference and the Board of Appeals in Interference, is not lightly to be stricken down when long recognized tests of invention appear to demonstrate it to be the result of the exercise of creative ingenuity, not expected from mere skill in the art. The problem involved in lubricating many bearings from a single source of oil pressure was long recognized. It is clear upon the record that Vincent and others had addressed themselves to its solution. They failed to impress the industry. The invention here considered has produced a practical device for accomplishing a long desired purpose. Its commercial success, while not as dramatic as more revolutionary inventions, quite sufficiently points to public recognition and substantial advancement of the lubrication art.

We are likewise aware of the deep concern felt by patent lawyers and research engineers, not only over higher standards of invention, but over what in some quarters[2] has been thought to be an entirely new concept of invention deriving from Cuno Corp. v. Automatic Devices Corp., 314 U.S. 84, 91, 62 S.Ct. 37, 41, 86 L.Ed. 58, where it was said that a new device "however useful it may be, must reveal the flash of creative genius, not merely the skill of the calling." We do not interpret the observation as indicating anything more significant than that the quality of invention is "something more" than expected mechanical skill. Nor do we read the phrase as another conscious effort to define the indefinable.

■■ Long experience with assailed inventions in trial and on review led us in humility to the conclusion that the inventive concept is an abstraction impossible to define, and so for that reason courts have sought for simple rules by which its presence may be detected, and while these have proved helpful they are never absolute; that long recognition of an existing problem in any art, and the advantages to accrue to an industry from its solution, have been considered as highly persuasive of invention when success is finally achieved; that sometimes achievement is revolutionary, but more often an inventor begins where others leave off, and perceives the vital forward step to which predecessors had been blind. Cleve-

---

[2] N. Y. Journal of Commerce, March 11, 1943 (2nd section).

land Trust Co. v. Schriber-Schroth Co., 6 Cir., 92 F.2d 330-334. Somewhat similar commentary was indulged in in A. O. Smith Corp. v. Petroleum Iron Wks., 6 Cir., 73 F.2d 531, at an earlier 'date. We have yet to encounter an invention which, prior art considered, seems to have sprung fully matured ·from the brow of genius. Whether in the great inventions adjudged patentable in the past the inventive concept arrived with the blinding suddenness of the lightning's flash, or from "the projection of the imagination into the realms of the unknown," or whether they were the product of painful and laborious experimentation apparently condemned as indicia of invention in Picard v. Aircraft Corp., 2 Cir., 128 F.2d 632, we do not know. Some were undoubtedly the product of accidental discovery. At least so thinks Dr. Kettering, Chairman of the National Patents Planning Commission. Certain it is that Edison placed little confidence in inspiration when he defined genius as "2% inspiration and 98% perspiration." [3] Of course, routine experimentation leading to a reasonably expectable result is not invention. Conversely the most brilliant and inspired conception is not invention unless it can be reduced to practice by novel means or method so that its utility may be demonstrated, Reo Motor Car Co. v. Gear Grinding Machine Co., 6 Cir., 42 F.2d 965, 968. All we can say in respect to the present problem is that measured by the conventional tests by which the presence or absence of invention has been determined, we are of the view that Hillis achieved a result beyond the reach of routine skill in the art, and that the claims in suit denote invention.

In the court below the claims were thought to have been anticipated by a transfer device delivered by Dirkes sometime in 1931 and advertised in the magazine "Automotive Industries" in its issue of January 9, 1932. Dirkes testified that the device was identical with the Hillis divisional feeder in construction, although its purpose was different. His testimony is, however, not corroborated. It is impossible to tell from the exhibited advertisement, what its elements were or what their organization. Even so, the advertisement does not constitute a sale of the device more than two years prior to the Hillis application. Mershon & Co.

v. Bay City Box & Lbr. Co., C.C., 189 F. 741; Daniel Green Felt Shoe Co. v. Dolgeville Felt Shoe Co., D.C.N.Y., 205 F. 745. An offer to sell is a bid for customers but is not a sale. Nat'l Cash Register Company v. American Cash Register Co., 2 Cir., 178 F. 79, 83. More important still is the fact that the claim of Dirkes that he had been in possession of the Hillis device more than two years prior to the filing of the Hillis application is in direct conflict with his oath to the affidavit filed in the Patent Office in support of his application for his own patent. Dirkes, in his counterclaim, contended that the Hillis device was an infringement of his patent No. 2,146,424, and yet he had sworn that he did not have the subject matter of his application on sale more than two years before the filing of his own application in 1937. The inference is inescapable that unless he made a false oath in the Patent Office, there was a substantial difference between the device he claimed to have put on sale by his advertisement, and the device of the patent in suit.

Decree reversed and cause remanded for further proceedings by way of injunction and accounting consistent herewith.