## MERCOID CORPORATION *v.* MINNEAPOLIS-HONEYWELL REGULATOR CO.

Nos. 58 and 59. Argued December 9, 10, 1943.—Decided January 3, 1944.

*Mr. George L. Wilkinson* for petitioner.

*Mr. Will Freeman,* with whom *Messrs. W. P. Bair* and *George H. Fisher* were on the brief, for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

These are companion cases to *Mercoid Corp.* v. *Mid-Continent Investment Co., ante,* p. 661. One suit was instituted by petitioner, the other by respondent. Petitioner sought a declaratory judgment to the effect that the Freeman patent No. 1,813,732 was invalid and that petitioner did not infringe it, that respondent had used the Freeman patent in violation of the anti-trust laws, that respondent be restrained from threatening petitioner and its customers with infringement suits, that an accounting be had and treble damages awarded. Respondent in its bill sought a decree sustaining the validity of the Freeman patent and declaring that petitioner had infringed and contributed to the infringement of its claims. In the latter action petitioner filed a counterclaim praying for substantially the same relief as in its earlier bill. After issues were joined the causes were consolidated and tried together. The District Court said that the Freeman patent was valid and that Mercoid was guilty of contributory infringement. But it held that Minneapolis-Honeywell was using the patent as a means of controlling an unpatented device contrary to the rule of *Morton Salt Co.* v. *G. S. Suppiger Co.,* 314 U. S. 488. Accordingly, it dismissed both complaints. 43 F. Supp. 878. On appeal the Circuit Court of Appeals held that the patent claims in issue were valid and that Mercoid had infringed them. But it disagreed with the District Court that respondent had sought to extend the scope of the patent in violation of the anti-trust laws. Accordingly, it reversed the judgment of the District Court dismissing respondent's bill

and affirmed it as respects the relief claimed by petitioner. 133 F. 2d 811.

The Freeman patent, as found below, covers a system of hot air furnace control which requires three thermostats for its operation. A room thermostat starts the stoker. Another thermostat (or limit switch) breaks the stoker circuit when the air in the furnace reaches a predetermined temperature, irrespective of the fact that the room thermostat may still call for heat. This second thermostat operates to prevent unsafe conditions due to overheating. The third thermostat is also in the furnace. It controls a fan which forces hot air from the furnace to the rooms. It does not permit the fan to start until the air in the furnace reaches a specified degree of heat. But at that point it starts the fan which continues to run, even though the limit switch has stopped the stoker, so long as the furnace is hot and the room thermostat calls for heat. The District Court found that the Freeman patent was a combination patent on a system of furnace control which requires those three thermostats for its operation and that it was not a patent on "either the fan switch or the limit switch or both of them." That finding was not disturbed by the Circuit Court of Appeals, which held that Freeman's "advance in the art" was the arrangement of thermostatic switches, subject to furnace heat to secure in connection with other parts the "sequence of operations" which we have described.

Minneapolis-Honeywell has licensed five of its manufacturing competitors under the Freeman patent. The licensees are granted a non-exclusive right under the patent to make, use and sell a "combination furnace control" which is defined as a thermostatic switch usable for a Freeman installation and designed in one unit to control the fan and limit circuits. Royalty payments to Minneapolis-Honeywell are based on the sales of the combination furnace controls, although the Circuit Court of Appeals found that the only Minneapolis-Honeywell con-

trol "which gets protection as a result of the licenses is the control usable only for a Freeman type installation." Each licensee is required to insert in its catalogues or other sales literature and to attach to each combination furnace control sold a notice to the effect that the control includes a license for one installation of the Freeman heating system. The licenses establish minimum prices for the sale of the controls; and those prices must not be cut by the licensees through the inclusion of "extras" or through the reduction of charges for services. Price lists are attached governing sales to manufacturers, jobbers, wholesalers, and dealers. Equal terms to all licensees are provided. Minneapolis-Honeywell tried on several occasions to induce Mercoid to take a license. Being unsuccessful it brought its present suit.

Neither the petitioner nor the respondent sells or installs the Freeman system in furnaces; that is to say, they do not practice the invention. They are competitors in supplying the switch to control the fan and limit circuits employed in such systems. That switch or combustion furnace control is unpatented [1] and respondent concedes that it is "less than the complete claimed invention." But, as we have said, the Circuit Court of Appeals took the view that that control provides "the sequence of operations which is the precise essence of Freeman's advance in the art." And the accused device has, according to the Circuit Court of Appeals, "no other use than for accomplishing the sequence of operations of the Freeman patent." The Circuit Court of Appeals concluded that although the combustion furnace control was unpatented, it served "to distinguish the invention" and to mark the "advance in the art" achieved by the Freeman patent. It accordingly

---

[1] There is some suggestion that this device is patented. But according to the District Court any such patent "is owned by some person other than Minneapolis-Honeywell and Mercoid, so that as to them and so far as this case is concerned, it is an unpatented device."

held that the patent laws permit and the anti-trust laws do not forbid the control over the sale and use of the unpatented device which Minneapolis-Honeywell sought to achieve through its licensing agreements. We do not agree, even though we assume the patent to be valid.

The fact that an unpatented part of a combination patent may distinguish the invention does not draw to it the privileges of a patent. That may be done only in the manner provided by law. However worthy it may be, however essential to the patent, an unpatented part of a combination patent is no more entitled to monopolistic protection than any other unpatented device. For as we pointed out in *Mercoid* v. *Mid-Continent Investment Co., supra,* a patent on a combination is a patent on the assembled or functioning whole, not on the separate parts. The legality of any attempt to bring unpatented goods within the protection of the patent is measured by the anti-trust laws not by the patent law. For the reasons stated in *Mercoid* v. *Mid-Continent Investment Co., supra,* the effort here made to control competition in this unpatented device plainly violates the anti-trust laws, even apart from the price-fixing provisions of the license agreements. It follows that petitioner is entitled to be relieved against the consequences of those acts. It likewise follows that respondent may not obtain from a court of equity any decree which directly or indirectly helps it to subvert the public policy which underlies the grant of its patent. *Morton Salt Co.* v. *G. S. Suppiger Co.,* 314 U. S. 488, 494; *B. B. Chemical Co.* v. *Ellis,* 314 U. S. 495.

The judgment is reversed and the causes are remanded to the District Court for proceedings in conformity with this opinion.

*Reversed.*

MR. JUSTICE ROBERTS, MR. JUSTICE REED, MR. JUSTICE FRANKFURTER, and MR. JUSTICE JACKSON concur in the result on the authority of *Morton Salt Co.* v. *G. S. Suppiger Co.,* 314 U. S. 488.