## FALKENBERG v. BERNARD EDWARD CO.

### No. 9757.

United States Court of Appeals
Seventh Circuit.

June 21, 1949.

Albert R. Teare, Cleveland, Ohio, George W. Saywell, Cleveland, Ohio, Arthur A. Olson, Chicago, Illinois, Bates, Teare & McBean, Cleveland, Ohio, Thiess, Olson & Mecklenburger, Chicago, Illinois, for plaintiff-appellant.

Will Freeman, W. Melville Van Sciver, Chicago, Illinois, Bair & Freeman, Chicago, Illinois, for appellee.

Before MAJOR, Chief Judge, and KERNER and DUFFY, Circuit Judges.

DUFFY, Circuit Judge.

Plaintiff is the owner of U.S. Letters Patent No. 2,409,425 pertaining to drapery mountings. In this action defendant is charged with infringement of Claims 14[1]

---

[1] "14. A mounting forming one of a plurality of similar hangers for the decorative hanging of draperies, comprising a body having a succession of spaced slots intersecting the periphery thereof and forming passages for successively folded portions of the drapery material, the body being further formed with chambers which are continuations of the respective slots and provide for adjustable

and 15[2]. The usual defenses of invalidity and non-infringement are presented.

The trial court made a finding that "plaintiff's hanger was novel, presented a genuine improvement to the drapehanging trade, and had remarkable public acceptance." The court said, "Under the state of the law as it formerly existed, these elements would probably combine to produce patentable invention." However, the trial court held that there was absent a flash of genius as described in Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58, and, after quoting from that case, concluded:

"Therefore, Claims 14 and 15 of Patent No. 2,409,425 are declared invalid for lack of invention. * * *"

It is apparent the trial court felt that as a result of the Cuno decision something new had been added by the Supreme Court to the test to be applied in determining invention. Indeed other courts have been of the same opinion. In Brown & Sharpe Mfg. Co. et al. v. Kar Engineering Co., Inc., D.C., 59 F.Supp. 820, page 825, the trial court said:

"If it were not for Cuno Engineering Corporation v. Automatic Devices Corporation * * * and the line of authority which it has engendered, see, for example, Anderson Co. v. Lion Products Co., 1 Cir., 127 F.2d 454, I should, on the basis of the considerations set forth in the preceding paragraph, have concluded that Bower had made a patentable invention. But I cannot see how such a conclusion can stand in the light of the changed standards prevailing since the recomposition of the Supreme Court of the United States. * * *

"Tested by the rules enunciated by Mr. Justice Douglas in Cuno's case, I conclude that claims 1, 5, 7 and 14 of the Bower patent are invalid. * * *"

The use of the term, "flash of creative genius," was unfortunate and met wide-spread surprise and criticism. For example, see the decision of this court in Chicago Steel Foundry Co. v. Burnside Steel Foundry Co., 7 Cir., 132 F.2d 812. Even the Court of Appeals for the First Circuit, reversing its former adherence to that view, said on the appeal of the Brown & Sharpe case, 154 F.2d 48, 51, after citing the opinion of the district court heretofore quoted:

"The foregoing squarely presents us with the question whether the Supreme Court in the Cuno case intended to establish for the future a new and higher standard of invention than had prevailed in the past." Citing a number of cases in which that question had been considered, the appellate court analyzed whether the flash of creative genius phrase had added a new or higher test of invention, and concluded that all the Supreme Court had intended in the Cuno case was a restatement of the traditional test. The court held that its earlier view to the contrary was a mistake.

In Trabon Engineering Corp. v. Dirkes et al., 136 F.2d 24, the Court of Appeals for the Sixth Circuit reversed a holding of invalidity by the district court, and in discussing the flash of genius concept stated, 136 F.2d at page 27:

" * * * We do not interpret the observation as indicating anything more significant than that the quality of invention is 'something more' than expected mechanical skill. Nor do we read the phrase as another conscious effort to define the indefinable."

■ We hold that the trial court herein erred in construing the phrase, "flash of genius," as adding a test for invention of a higher degree or superior to that which would have produced patentable invention under the law as it existed prior to the date of the Cuno decision. As we have done heretofore (Chicago Steel Foundry Co. v. Burnside Steel Foundry Co., supra) we re-

take-up of the drapery material, the body being formed with an extension serving to support the material exteriorly of the body proper.

2 "15. In drapery mountings, the combination with a support, of a pair of hangers secured to the support and inclined toward each other, the hangers being formed with chambers having spaced open-ended entrances for the sliding passage into the chambers of folded drapery material whereby there is provided by the chambers a flexible accommodation for material to facilitate selective decorative dependent draping of the material from the hangers."

ject the flash of genius test. We shall concentrate our scrutiny on whether, in the claimed invention, Falkenberg displayed more ingenuity than a workman skilled in his line of work.

It is a conspicuous fact that in recent years the Supreme Court has struck down patents which, if judged by standards set in the older cases, would seemingly have been held valid. However, it must be kept in mind that the skill of the mechanic in most of the arts is much greater today than in earlier periods. As technological knowledge becomes available to more people and as the general levels of education become higher, it is natural that the mechanic or worker in the arts has greater skill than formerly.

The draping with which the patent in suit is concerned is known as "over-draping" and is hung further within the room than window shades, curtains or other window coverings. The distance at which the draping is spaced from the window frame, upon which the drapery is supported, is governed by the length of what is referred to in the trade as the "extension." The over-drapes, which are also known as "valances," serve mostly as ornamantal decoration. The drape which extends horizontally across the top of the window, from one corner to the other, is known as a "sweep," and the dependent side panels are called "cascades." The vertical depth of the horizontal sweep and the length of the side cascades are matters of individual choice.

Prior to the development of the hanger of the patent in suit, the desirable decorative effect of drapes now produced by the use of plaintiff's hanger could only be achieved by the custom-built or cut workroom type of draperies wherein each piece of material was cut by a skilled designer according to a pattern. The drawbacks of this type of festooning were (1) its cost, (2) the length of time—several weeks or even months—for its manufacture and installation, (3) such drapes would only fit the size window for which designed and professional assistance was needed if they were removed for laundering or other purposes, (4) smaller towns and rural areas did not contain establishments qualified to do this work.

Prior to plaintiff's hanger a somewhat similar effect was obtained by the use of two ring-type hangers mounted at the upper corners of a window frame. The draping material was either hung behind the rings or threaded through them. The results, however, were not satisfactory, in that the festooning effect often became distorted and the sweep at times would lose its formation from the sheer weight of the draping material, and oftentimes the dropping of the sweep exposed the top of the window frame, producing an unsightly appearance. A uniform and symmetrical appearance in either the sweep or the cascades was very difficult to maintain for any length of time when the ring-type hangers were used.

Plaintiff, who had long experience in the drapery business, conceived a unique and ingenious drapery fixture which would simulate a human hand. The "fingers" would evenly space the drapery folds and hold them in place, and at the same time provide a reservoir of material that could be drawn upon to the extent required to manipulate the sweep and the cascades. By placing one such fixture at each upper corner of the window frame, this concept permitted festooning with a single piece of material which could be more conveniently removed and laundered. The cost of plaintiff's hangers is $1.50 to $2.00 a window, in contrast to a labor cost of $10.00 or more for the custom-made draping. Also a housewife inexperienced in valance draping can hang her own drapes by using plaintiff's hangers. Likewise valances used with such hangers can be moved and adjusted on the same or similar hangers to fit another window of different size, and individual preferences for special festooning involve only the adjustment of one or two folds of material.

The evidence shows that plaintiff's hanger has had wide-spread public acceptance; that housewives became more festoon-minded after plaintiff's hanger was on the market; and that their use has resulted in attractive ornamental window draping in homes in many communities where facilities for custom-made draperies are not available. The finding of the trial court that "plaintiff's hanger was novel, present-

ed a genuine improvement to the drape-hanging trade" is abundantly supported by the evidence. Since we feel the "state of the law" has not changed, the trial court's finding that these elements would probably combine to produce patentable invention under the state of the law formerly existing is tantamount to a finding of patentable invention.

A long line of cases could be cited holding that the determination of patentable invention is a question of fact; however, other courts have dealt with the issue as though it were a question of law. A citation of such authorities would not be helpful in view of the recent decision of the United States Supreme Court in Graver Tank and Mfg. Co., Inc., et al. v. Linde Air Products Co., 336 U.S. 271, 69 S.Ct. 535. In that case Justices Black and Douglas, in a concurring opinion, stated that it is their view that the ultimate question of patentability is a question of law. However, the majority opinion specifically applies Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A., and states, 336 U.S. at page 275, 69 S.Ct. at page 538:

"* * * A court of law, such as this Court is, rather than a court for correction of errors in fact finding, cannot undertake to review concurrent findings of fact by two courts below in the absence of a very obvious and exceptional showing of error."

And, further, 336 U.S. on page 279, 69 S.Ct. at page 540:

"* * * But the record in this case, while not establishing to a certainty that the findings are right, fall far short of convincing us that they are clearly erroneous. We think that the rules that govern review entitle the trial court's conclusions to prevail and that the process claims are invalid under the statute."

Although the Supreme Court has granted a rehearing in the Graver case, the petition for rehearing discloses that it is directed primarily to the finding of infringement of the flux claims in Cause 185. Petitioner there claims that the finding of infringement by the trial court rests upon a reading of the language of the patent and that all cases heretofore decided have held

that a finding so based is a question of law and not of fact.

█ On the question of infringement the defendant argues somewhat mildly that its structure does not contain certain "essential details" called for in Claims 14 and 15 of the patent in suit. However, the evidence amply supports the finding of the trial court, to wit,

"It is clear from the evidence adduced that the defendant set out to, and actually did, copy the plaintiff's device. The only basic distinction between the two articles produced by the parties is that, whereas the plaintiff used the above-mentioned pin for the purpose of securing the material in the hanger, the defendant added beads or humps within the slots which act as clamps. Such an addition, however, tends to accentuate, rather than differentiate, the copying."

Although the decision of the trial court did not mention the prior art, defendant in this court insists that Berglund's Patent No. 1,746,577, Law Patent No. 1,701,-783, Kuhnel Patent No. 631,401, and Kimball Patent No. 717,751, invalidate the claims here in issue. All of these patents were issued at least fifteen years prior to Falkenberg's filing date.

The Berglund patent, issued February 11, 1930, is cited by defendant as the closest reference. In this patent the fixture is a resilient metal strip comprising alternatively large and small loops. The purpose of the device was to keep in place ruffling at the lower or sill level of the window. Berglund's device firmly holds the depending material at the bottom of the window in rounded formation after it has been draped at the top by an expert. Berglund says that most ruffled drapes hang in a rather disorderly or somewhat rumpled condition. He enters the picture after an expert has formed the ruffles by his draping at the top of the window. By contrast the devices of plaintiff and of defendant at the top of the window effect graceful falls of the depending material. We do not think that Berglund anticipates.

The disclosure of the Law patent is a necktie rack. It shows a series of clamps

or clips affixed to a rack. It could not be used to secure the width at the sides of the upper portion of the festoon valance, as is true of plaintiff's bracket. Curtain rods or other hardware could not be hung behind it, as can be done with plaintiff's bracket. It could not be used for festooning.

Kuhnel discloses no pockets or chambers which are continuations of slots. His device discloses no enlarged pockets for the accommodation of material, permitting individualized draping. Kuhnel is a device for hanging ordinary curtains, rather than an over-drape hanger. It could not be used to produce a festoon valance.

The Kimball disclosure would not provide width of festooning at the upper corner of the valance. It discloses a double hanger for two coats or similar article. Uniform and symmetrical ornamental draping could not be obtained by using this device.

We are of the opinion that the claims in suit are not invalidated by any of the patents cited by defendant.

Defendant insists that plaintiff should not be permitted to recover in any event because of alleged misuse of his patent. We understand the defendant's position to be as follows: Claim 15 of the patent in suit is a combination claim; it includes as part of such combination "a support" which is a window frame; plaintiff, who manufactures brackets but not window frames, is now seeking through Claim 15 to bring unpatented goods within the protection of the patent. Defendant points out that the complaint charged both direct and contributory infringement, and relies upon Mercoid Corp. v. Mid-Continent Investment Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376; Mercoid Corp. v. Minneapolis-Honeywell Regulator Co., 320 U.S. 680, 64 S.Ct. 278, 88 L.Ed. 396; and Sylvania Industrial Corp. v. Visking Corp., 4 Cir., 132 F.2d 947. Defendant states in its brief, "Even though plaintiff may have claim 14 in his patent, he still misuses his patent when he sues on claims 14 and 15. * * * The bringing of a suit for contributory infringement on claim 15 by the plaintiff is only for the purpose of protecting a bracket made by plaintiff and that being an unpatented part, or less than the full claim, precludes plaintiff from obtaining equitable relief."

It is difficult to follow defendant's reasoning. At one point it seems to refer to the window frame as the unpatented part, but later the bracket is specifically mentioned under that category. However, the bracket referred to in Claim 15 is a patented article. The bracket of course has to be attached to some kind of support; it cannot be used suspended in thin air. No evidence was offered to suggest that plaintiff sought to have his bracket used as a tie-up with any particular brand or type of window frame, or otherwise sought to enlarge the monopoly given to him. In the Mercoid case, 320 U.S. 661, 680, 64 S.Ct. 268, 88 L.Ed. 376, the royalty payments were based only upon sales of the unpatented stoker switch, and the right to use the patented system was granted only when the stoker switches of licensee were purchased from it and used in the system. In the Sylvania case plaintiff used patents owned by it, including the patents there in suit, for the purpose of obtaining a limited monopoly of unpatented cellulose sausage casings.

If plaintiff herein used his patent to gain a monopoly, it was within the grant of his patent. This he has a right to do. The defense of misuse is not sustained because no evidence was presented to prove plaintiff used his patent to secure a monopoly beyond the scope of his grant.

Defendant also offers the defense of file wrapper estoppel. It is sufficient to state that we have given it careful consideration, but conclude that it has not been established in this case.

As we are of the opinion that Claims 14 and 15 are valid and infringed, the judgment below is

Reversed.