**DR. SALSBURY'S LABORATORIES**

v.

**I. D. RUSSELL CO. LABORATORIES.**

No. 14967.

United States Court of Appeals Eighth Circuit.

April 21, 1954.

Rehearing Denied May 13, 1954.

Giles S. Rich, New York City (C. Earl Hovey, Kansas City, Mo., was with him on the brief), for appellant.

Charles J. Merriam, Chicago, Ill. (Richard K. Phelps and Lawrence K. Brown, Kansas City, Mo., were with him on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and COLLET, Circuit Judges.

COLLET, Circuit Judge.

This is an action for active inducement to infringe and contributory infringement of a patent, wherein plaintiff prays both treble damages and injunctive relief. From a summary judgment entered in favor of defendant by the District Court below, plaintiff appeals.

The factual background surrounding the alleged infringement is not new to

this court. In I. D. Russell Co. v. Dr. Salsbury's Laboratories, 8 Cir., 1952, 198 F.2d 473, we held under identical facts that plaintiff's own patent misuse effectively barred recovery. It is plaintiff's instant contention that, as a result of legislation enacted subsequent to the earlier litigation, the law of misuse has been changed, thereby creating this, a *new* cause of action for continuing infringement. Defendants deny that a change in the law has been effected and insist, inter alia, that res judicata necessitated the summary judgment here in question.

 The District Judge, in his memorandum opinion sustaining defendant's motion, stated:

"It is my impression that none of the questions raised by the defendants is of importance at this time, except that of res judicata and the alleged changing of the law subsequent to the final determination of this case.

"If the law has been changed, and as a result of that change a violation since January 1, 1953, the plaintiff would have a cause of action. If there has been no change in the law, or if the change in the law does not affect the cause of action here, then the plaintiff cannot prosecute this action, and the motion must be sustained."

We are in complete accord with this statement of the question, it being in effect admitted that plaintiff is entitled to recovery for infringement upon purgation of its previous misuse.

To grasp the nature of the misuse heretofore adjudicated, it will be recalled that plaintiff is the producer of a "Poultry Treatment Composition", which it sells under the trade name "Renosal". This product is sold in both powder and tablet form and, when mixed with prescribed amounts of water by the purchaser, is effective in treating a poultry disease known as cecal coccidiosis and in stimulating poultry growth. It is this product, when diluted and ready for in-gestion, on which plaintiff obtained its patent. Defendants' product, sold under the trade names Korum and Zuco, is for all relevant purposes identical in composition and manner of use.

We shall not undertake to discuss extensively the component physical characteristics of the parties' respective products, as this has already been done adequately in the previous opinion of this court. However, it was adjudicated upon prior appeal, and we reiterate once more, that the products in question consist essentially of a 3-nitro-4-hydroxy phenyl arsenic acid mixture operating, when dissolved, within a regulated concentration range. Though plaintiff again argues that its Renosal and defendants' Zuco and Korum are not the chemical raw material, 3-nitro, it was nevertheless pointed out with sufficient clarity in the earlier opinion that it is 3-nitro which the parties in effect are selling. Whatever may be plaintiff's contention as to the change effected in the laws of misuse, it will not now be heard to try on appeal the factual issues heretofore adjudicated. We previously said, and here repeat:

"The patent is for a composition of two unpatented substances, water and 3-nitro. * * *

"So, also, is plaintiff's contention without merit that in selling 3-nitro, an unpatented article, under the trade name of Renosal, and by restricting its use, except under the patent by directions on the label, the 3-nitro thus becomes identified with the patent and is no longer a common raw material but that it becomes an entity within the patent."

I. D. Russell Co. v. Dr. Salsbury's Laboratories, 8 Cir, 198 F.2d 473, 474–475.

We bear in mind, therefore, that plaintiff is selling 3-nitro and is in effect complaining of defendants' sale of the same unpatentable material. This is not to say that other dilutive ingredients are not used in the final ingestible composition, but it was held in the earlier opinion, and we merely note here, that the

3-nitro sold does not become by restrictive use so identified with plaintiff's patent at to lose its characteristics as a common raw material. As we said then, "Even if such magical transformation is true as to Renosal, it does not apply to 3-nitro sold by others." Since plaintiff's only serious defense against res judicata is that a change in the law has been effected, we direct our inquiry solely to the legal question raised. Admittedly, if there has been a decisive change in the law of misuse, plaintiff properly states a new cause of action. Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898.

■ An impressive array of authorities has held that whatever may be a patentee's property rights in his patent, he cannot be permitted to control by monopoly unpatentable material used as an essential component part of the patented combination. Such improper monopoly, if exerted, amounts to misuse of the patent granted. In Carbice Corporation of America v. American Patents Corp., 283 U.S. 27, 31–32, 51 S.Ct. 334, 335, 75 L.Ed. 819, cited in our earlier opinion, Justice Brandeis stated:

"The limited monopoly to make, use, and vend an article may not be 'expanded by limitations as to materials and supplies necessary to the operation of it.' Motion Picture Patents Co. v. Universal Film Mfg. Co., 243 U.S. 502, 515, 37 S.Ct. 416, 420, 61 L.Ed. 871. Compare United Shoe Machinery Corp. v. United States, 258 U.S. 451, 462, 42 S.Ct. 363, 66 L.Ed. 708; United States v. General Electric Co., 272 U.S. 476, 492, 47 S.Ct. 192, 71 L.Ed. 362. " * * * it was held that to permit the patent-owner to 'derive its profit, not from the invention on which the law gives it a monopoly, but from the unpatented supplies with which it is used' is 'wholly without the scope of the patent monopoly.' * * * If a monopoly could be so expanded, the owner of a patent for a product might con-

ceivably monopolize the commerce in a large part of unpatented materials used in its manufacture."

See also Mercoid Corp. v. Minneapolis-Honeywell Regulator Co., 320 U.S. 680, 64 S.Ct. 278, 88 L.Ed. 396.

In view of the foregoing authorities, and the fact heretofore adjudicated that the parties are selling unpatented 3-nitro, we must conclude that, absent a change in the law, plaintiff's misuse in monopolizing 3-nitro precludes recovery for patent infringement. Can we say that the new patent statute, effective January 1, 1953, and relied upon by plaintiff, has rejected the principles laid down by the Carbice and Mercoid cases?

The pertinent provisions of the new Act, 35 U.S.C. § 271, are as follows:

§ 271. Infringement of patent.

"(a) Except as otherwise provided in this title, whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent.

"(b) Whoever actively induces infringement of a patent shall be liable as an infringer.

"(c) Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, *and not a staple article or commodity of commerce suitable for substantial noninfringing use,* shall be liable as a contributory infringer. (Italics supplied.)

"(d) No patent owner otherwise entitled to relief for infringement or contributory infringement of a patent shall be denied relief or deemed guilty of misuse or illegal extension of the patent right by reason of his having done one or more of the following: (1) derived

revenue from acts which if performed by another without his consent would constitute contributory infringement of the patent; (2) licensed or authorized another to perform acts which if performed without his consent would constitute contributory infringement of the patent; (3) sought to enforce his patent rights against infringement or contributory infringement."

The parties have devoted considerable discussion in their briefs to whether the new patent law is merely a statutory codification of pre-existing stare decisis, or whether it has brought a change in the law. We deem it unnecessary for a decision in this case to ponder the question insofar as the overall effect of the new title is concerned. Confining our views only to the pertinent provisions of § 271, we believe that, whatever changes may or may not have been made in other respects, there has been no abrogation of the principle announced in the Carbice and Mercoid cases, viz., that the sale of a nonpatentable component of a patented combination does not give rise to a cause of action for infringement. Though subsection (c) of § 271 defines a contributory infringer to be anyone who sells a component of a patented machine or composition knowing it to be especially adapted for infringing use, it specifically provides that said component *not* be "a staple article or commodity of commerce suitable for substantial noninfringing use". Whatever the significance of other provisions of the Act, we believe this exceptive clause is controlling here. The fact was adjudicated on the former appeal that the unpatented 3-nitro utilized by the parties in their respective products is a staple which did not lose its identity as a common raw material. From the former opinion of this court the District Judge, in entering the summary judgment now before us, properly concluded:

"It would seem in this case that the basis of the appellate court's reversal of this court's judgment was in fact that the plaintiff is selling an unpatentable commodity or 'a staple article or commodity of commerce suitable for substantial noninfringing use' as defined in said Section 271."

Since, in the respect noted, § 271 (d) is readily harmonized with prior case authority, plaintiff cannot state a new cause of action without, in the very face of the former adjudication, reopening the factual issue of the chemical nature of the parties' respective products. This, plaintiff will not be permitted to do.

For the foregoing reasons, the motion for summary judgment was properly sustained. The judgment appealed from is affirmed.