SWITZER BROTHERS, INC., Robert C. Switzer and Joseph L. Switzer, Counter-Defendants, Appellants, and Cross-Appellees,

v.

Harry P. LOCKLIN and Elmer J. Brant, general partners doing business under the firm name of Radiant Color Company, Counter-Plaintiffs, Appellees, and Cross-Appellants.

Nos. 13193, 13194.

United States Court of Appeals Seventh Circuit.

Nov. 30, 1961.

Albert L. Ely, Jr., Sidney D. L. Jackson, Jr., Cleveland, Ohio, M. Hudson Rathburn, Chicago, Ill., for Switzer Brothers, Inc.

Carl Hoppe, San Francisco, Cal., W. J. Marshall, Jr., Chicago, Ill., for Radiant Color Co.

Before SCHNACKENBERG and KILEY, Circuit Judges, and MERCER, District Judge.

MERCER, District Judge.

Appellants, Switzer Bros., Inc., Robert C. Switzer and Joseph L. Switzer, appeal from a judgment granting injunctive relief to appellee and ordering appellants to render an accounting on account of violation of 15 U.S.C.A. §§ 1, 2 and 14. Harry P. Locklin and Elmer J. Brant, d/b/a Radiant Color Company, prosecute a cross-appeal, contending that the court below erred in failing to enjoin appellants from continuing to use the registered trademark, "Day-Glo", in the marketing of daylight fluorescent materials.

Hereinafter, for convenience, the name Switzer, is used to denote Switzer Brothers, Inc., the term appellants is used to denote Switzer, Robert C. Switzer and Joseph L. Switzer, collectively, and the term appellee is used to denote Radiant Color Company.

Switzer, an Ohio corporation which is wholly owned by the individual appellants, Robert C. and Joseph L. Switzer, is engaged in the manufacturing and selling of daylight fluorescent materials, which it markets in interstate commerce under the registered trademark "Day-Glo". At all times since January 1, 1949, appellee has been a competitor of Switzer, manufacturing and marketing daylight fluorescent materials in interstate commerce under the trade name, "Velva-Glo."

The cause was tried upon appellee's counter-claim for injunctive relief and treble damages in which it was alleged that appellants had attempted to monopolize the fluorescent materials market in violation of the antitrust laws, and appellants' counterclaim against appellee, alleging antitrust violations and unfair competition.[1]

After a trial which lasted for some three weeks, the District Court entered voluminous findings of fact, about some of which the principal issues for decision revolve. The findings are summarized, generally, to the extent deemed necessary to an understanding of the issues, before specific contentions against the findings are treated in relationship to the applicable law.

Daylight fluorescent materials are pigments, liquid colors and coated paper and cardboard which produce brilliant color effects through the phenomenon of fluorescence in response to the visible light of day. End-use products in which such materials are employed include signalling, novelty and advertising devices.

Switzer is the assignee of various patents relating, insofar as here pertinent, to the production of daylight fluorescent devices and displays. Switzer is also the owner of the registered trademark "Day-Glo" which it employs in marketing its fluorescent materials. At all times material to this cause, Switzer marketed its products only through a pyramid of licensed manufacturers and dealers employing such materials. Switzer is, as the court found, the apex of the pyramid, superimposed above at least eight licensed manufacturers of daylight fluorescent materials, licensed dealers in all parts of the United States and more than 4,000 end-use manufacturers who composed the base of the pyramid.

Under contracts with Sherwin-Williams Company and other manufacturers of pigments, papers and inks, Switzer licensed each manufacturer to use the Switzer patents upon consideration of the manufacturers' agreements that they would market all fluorescent materials manufactured by them under the Day-

---

[1] The action was originally commenced by appellants as a patent infringement suit against a number of appellee's customers who are engaged in making and marketing daylight fluorescent advertising displays. Appellee intervened on behalf of its customers and filed answers to the complaint. Pursuant to the mandate of this court, Switzer Bros. v. Locklin, 7 Cir., 207 F.2d 483, appellee filed its counter-claim under the antitrust laws. The patent infringement complaint was subsequently dismissed, and that judgment was affirmed. Switzer Bros. v. Chicago Cardboard Co., 7 Cir., 252 F.2d 407. The cause was then tried upon the issues raised under the antitrust laws.

Glo mark and would sell such materials only to Switzer licensed dealers and end-use device manufacturers. The manufacturers were authorized, with Switzer's approval, to enter into licensing agreements with dealers and end-users.

Switzer, and its licensed manufacturers, entered into contracts with a number of dealers, under which such dealers were licensed to sell Day-Glo materials, upon the dealer's agreement that they would deal only in daylight fluorescent materials which carried the Day-Glo mark and were obtained from Switzer or other sources authorized in writing by Switzer to produce fluorescent materials; that they would sell such material only to Switzer licenses; and that they would not compete with Switzer or with other authorized sources of Day-Glo materials. These dealers, also with Switzer's approval, were authorized to enter into agreements with end-use manufacturers, licensing such manufacturers to use the Switzer patents.

Finally, agreements were made with the more than 4,000 end-use manufacturers under which they were granted a license to manufacture fluorescent end-use devices under the Switzer patents upon their agreement that they would use the trademark Day-Glo on all end-use devices manufactured and that they would buy their fluorescent materials only from Switzer or from other sources approved in writing by Switzer as a supplier of such materials.

Each agreement in the first and last-mentioned categories required the payment to Switzer of royalties, measured by a percentage of volume of business.

No licenses under the Switzer patents were granted to any end-use manufacturer, except under the licensing agreements hereinabove summarized, and except under label licenses adopted in 1952 which granted to purchasers of Day-Glo materials a royalty-paid license to use "only" the purchased materials in devices covered by the Switzer patents.

All materials manufacturers' licenses, all end-use manufacturers' licenses and all label licenses referred specifically to Switzer patents 2,417,384 and 2,475,529 relating to the manufacture of daylight fluorescent devices. The court found, and that finding is not challenged, that the daylight fluorescent materials manufactured by Switzer and its licensees have substantial non-infringing uses not defined in any claim of those patents.

Beginning in early 1949, Switzer charged non-licensees and all users of non-licensed displays with patent infringement through advertisements and news releases in trade papers and through letters and oral communications. Beginning in latter 1949, the same media and methods were employed to threaten all non-licensed manufacturers and all users of non-licensed devices with patent infringement suits. Suits were commenced in widely scattered parts of the United States against unlicensed dealers in daylight fluorescent materials, manufacturers of end-use devices and users of such devices. Two of those suits, including the instant case, were instituted against appellee's customers. The court found that all of this activity was done in furtherance of Switzer's licensing program.

Appellee was in the target area of Switzer's campaign. Switzer licensees and others were advised that appellee's "Velva-Glo" materials were infringements of Switzer's patents. Appellee's customers were threatened with suit, and ultimately some of them were actually sued. The last was done, as the court found, to deter consumers and prospective consumers from purchasing fluorescent materials produced by appellee.

The court found that the Switzer publications and threats were unauthorized because they purported to claim a monopoly in the whole field of daylight fluorescent displays, were excessive, as Switzer should have known, and were not followed promptly by litigation against all of those to whom they were directed.

Finally, the court found that the Switzer licenses have the effect of lessening competition and creating a monopoly in

daylight fluorescent materials, that the individual appellants participated in the illegal acts, that appellee was damaged in respects to be hereinafter noted, that an injunction should issue and that appellants should account to appellee in treble damages as determined by a subsequent accounting.

By its judgment order the court decreed that appellants had misused the Switzer patents and the Day-Glo trademark in restraint of trade in interstate commerce in violation of the antitrust laws. 15 U.S.C.A. §§ 1, 2, 14. An injunction was ordered restraining appellants and each of them:

(a) from granting any license to use the combination claimed by said Switzer patents 2,417,384 and 2,475,529, where such licensed use is directly or indirectly conditioned on purchasing or otherwise obtaining only from Switzer Brothers Inc., or from sources designated by it, any daylight fluorescent materials to be used in such combination, but not patented by such patents;

(b) from selling or offering to sell any daylight fluorescent materials, with an undertaking or understanding that the purchaser will be granted the right to use the combination claimed in said Switzer patents on condition that such daylight fluorescent materials, unpatented with respect to said patents, shall be purchased only from Switzer Brothers, Inc., or from sources designated by it;

(c) from in any way discriminating in the granting of licenses to use the combination claimed in said Switzer patents, in favor of users or proposed users of such combination who purchase daylight fluorescent materials therefor from Switzer Brothers, Inc., or from a source directed by it, and against such users or proposed users who purchase such daylight fluorescent materials from any other sources;

(d) from so using said Switzer patents as to tend to create a monopoly in daylight fluorescent materials not patented by such patents, or in any way, directly or indirectly, misusing such patents, in violation of the antitrust laws of the United States, particularly United States Code, Title 15, Sections 1, 2, and 14;

(e) from bringing suit against or in any way threatening the customers of Radiant Color Company with suits for alleged infringement of said Switzer patents on account of the sale and use of daylight fluorescent materials which have been obtained from Radiant Color Company and are not embraced by the claims of said patents; and,

(f) from making representations that the Switzer patents cover fluorescent materials produced by Radiant Color Company, or devices made from such materials, which are not embraced by the claim of said patents.

The decree also referred the cause to a special master to take and report on accounting of appellee's damages.

Appellants' principal contention for reversal is that Switzer's licensing policy and appellants' practice thereunder was not a violation of the antitrust laws, but was a lawful business practice legitimately pursued. Since the trial court entered findings opposed to that contention, the issue resolves itself into the question whether the findings of fact leading to the judgment that the antitrust laws were violated are supported by the record.

We reject at the outset appellants' contention that we are concerned only with construction of written contracts, and therefore Rule 52(a), Fed.R.Civ.P., 28 U.S.C.A., does not apply. The basic licenses used by appellant tie the right to the use of patents to the use of the Day-Glo trademark, and both to the exclusive use of Switzer produced, or Switzer approved materials. The combination thereof is, *per se*, a violation of the antitrust laws, International Salt Co. v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20; Standard Sanitary Mfg. Co. v. United States, 226 U.S. 20, 33 S.Ct. 9, 57 L.Ed. 107, unless the evidence requires a finding that the unique circumstances of the industry required adoption of a tie-in program, otherwise unlawful, as a le-

gitimate business practice. E. g., United States v. Jerrold Electronics Corp., D.C. E.D.Pa., 187 F.Supp. 545, aff'd per curiam, 365 U.S. 567, 81 S.Ct. 755, 5 L.Ed. 2d 806. Thus, the issue is one to be determined from the record evidence of Switzer practices. That issue depends upon a voluminous record, composed of testimonial and exhibit evidence. Rule 52(a) is particularly applicable to such a record. International Boxing Club v. United States, 358 U.S. 242, 252, 79 S.Ct. 245, 3 L.Ed.2d 270; Timken Roller Bearing Co. v. United States, 341 U.S. 593, 596–597, 71 S.Ct. 971, 95 L.Ed. 1199; Milwaukee Towne Corp. v. Loew's Inc., 7 Cir., 190 F.2d 561, 564–565, cert. denied 342 U.S. 909, 72 S.Ct. 303, 96 L.Ed. 680.

Upon the question whether the findings are supported by the record, the license agreements themselves support the monopoly findings. The patent licenses were conditioned upon the use of the Day-Glo mark. From Switzer, at the apex, to the more than 4,000 end-use manufacturers at the base of the pyramid of Switzer control established by the licenses, all were required to place the Day-Glo trademark upon all raw materials and end-use devices produced. Each licensee agreed, as a condition of the license, that only materials manufactured by Switzer or approved by it in writing might be used in the production of fluorescent displays. Switzer's licensed manufacturers and dealers were enjoined by their license agreements not to sell to any person other than Switzer licensees.

The evidence apart from the licenses reveals that Switzer refused to sell fluorescent materials to persons other than its licensees, and that no materials were ever approved for use by its licensees except materials produced by manufacturers who held a Switzer license. Appellants' argument that non-licensed materials which met Switzer quality standards would have been approved after testing by Switzer is refuted by Switzer correspondence conditioning approval upon acceptance of a Switzer license and the payment to Switzer of royalties.

There is ample proof that appellants made excessive and reckless claims of patent infringement in the furtherance of their licensing program. Their patents were limited to certain end-use, combination devices and appellants do not challenge the finding that the basic fluorescent materials had substantial non-infringing uses. Yet, the patents were asserted by appellants as a monopoly on all fluorescent materials and all daylight fluorescent displays. This is demonstrated by evidence of Switzer's position that every fluorescent display which was not marked with the Day-Glo trademark was an infringement of its patents.

The record amply supports the finding and conclusion that the Switzer licensing program was conceived and employed to foster a Switzer monopoly in the daylight fluorescent industry. The licenses required, as a condition for the grant thereof, that the licensee purchase all materials from Switzer, or sources approved in writing by it, not only for production of the patented devices, but also for the production of all daylight fluorescent devices. The grant of the patent license was also conditioned upon the licensees accepting the Switzer Day-Glo trademark. These are precisely the type of tie-in schemes which have been frequently condemned by the Supreme Court. Automatic Radio Mfg. Co. v. Hazeltine Research, 339 U.S. 827, 830–832, 70 S.Ct. 894, 94 L.Ed. 1312; International Salt Co. v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20; Mercoid Corp. v. Minneapolis-Honeywell Reg. Co., 320 U.S. 680, 64 S.Ct. 278, 88 L.Ed. 396; Mercoid Corp. v. Mid-Continent Inv. Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376; Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363; Ethyl Gasoline Corp. v. United States, 309 U.S. 436, 60 S.Ct. 618, 84 L.Ed. 852; Cf., Northern Pacific R. Co. v. United States, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545; United States v. Paramount Pictures, Inc., 334 U.S. 131, 68 S. Ct. 915, 92 L.Ed. 1260.

Appellants attempt to justify their licensing program and activities in fur-

therance thereof by reference to the principles applied in United States v. Jerrold Electronics Corp., D.C.E.D.Pa., 187 F.Supp. 545, aff'd *per curiam*, 365 U.S. 567, 81 S.Ct. 755, 5 L.Ed.2d 806, and Dehydrating Process Co. v. A. O. Smith Corp., 1 Cir., 292 F.2d 653. They urge upon us evidence that appellants had suffered a disastrous experience in Canada from uncontrolled sales of fluorescent materials, and that their licensing program in United States marketing was designed to permit control of the quality and method of use of the materials in order to forestall a repeat of the Canada fiasco.

■ Appellants' position is without merit. The trial court rejected the evidence now urged upon us, and its failure to enter findings with respect thereto is tantamount to findings adverse to appellants upon the evidence. Container Patents Corp. v. Stant, 7 Cir., 143 F.2d 170, 172, cert. denied 323 U.S. 734, 65 S.Ct. 71, 89 L.Ed. 588. Furthermore, the findings entered by the court imply its rejection of the argument now asserted. Even upon the unsatisfactory presentation here,[2] we are convinced that those findings are unassailable.

Therein is found a basic point of distinguishing this cause from the Jerrold and Dehydrating cases. In each of those cases, the trial court found that practices, presumptively in violation of the antitrust laws, were, in fact, a legitimate exercise of business practice. Here, by contrast, the court found upon conflicting evidence that appellants' activities were unlawful both *per se* and in fact. That finding is unassailable in this court unless it is demonstrated to be clearly erroneous. Fed.R.Civ.P. 52(a), 28 U.S.C.A.

An analysis of Jerrold and Dehydrating discloses, also, that each is inapposite factually to the case at bar. Jerrold was a new business, pioneering the development of a master television antenna, designed to pick up television signals at a central tower for transmission and distribution by cable to whole communities which were out of the range of normal television reception. Its first sales of equipment were made on an experimental basis before the system was perfected, with Jerrold agreeing to furnish without further charge such new equipment and modifications of equipment as experimental use of the installations might prove to be necessary. Thereafter, Jerrold, who manufactured only parts of the total system, sold its equipment only on a full-system basis, with the buyer agreeing that he would buy only equipment approved by Jerrold for repairs or expansion of the system and with the buyer accepting a compulsory service contract under which the equipment would be serviced by Jerrold engineers. The court characterized the tie-in arrangements as, *per se*, unreasonable, but held it to be a legitimate business arrangement at its inception, for the reason that Jerrold was pioneering a new technology, not then perfected, which was likely to succeed and gain public acceptance only if control of the equipment were retained by Jerrold who was familiar with the technological limitations and problems involved. The court held, however, that continuation of the tie-ins by Jerrold after the system was perfected was an unreasonable restraint and a violation of the antitrust laws.

In the Dehydrating case, it was charged that the sales practice adopted by Smith of selling its patented silo-unloading device only for use in its own patented, glass-lined silo was a tie-in pro-

---

2. The transcript of the trial comprises almost 4,000 pages of testimony. The appendix presented by appellants is composed of skimpy excerpts from that mass of testimony, and it falls far short of the intendment of our Rule 16(b), 28 U.S.C.A. We have not resolved the appeal upon the basis of the Rule, see A. O. Smith Corp. v. Pre-Fab Transit Co., 7 Cir., 287 F.2d 210, because the appendices presented show beyond doubt that the findings of the court below are sustained by the evidence.

hibited by the antitrust laws. Smith's unloader, installed inside at the bottom of a silo or storage bin, used a sweep arm to direct stored material from storage through a slot in the base of the silo or bin. Successful operation of the unloader required an unimpeded, gravity down-feed of the stored material onto the unloader. When the unloader was first marketed, it was sold by Smith without restriction as to its use. The tie-in policy was adopted some 7 years later, after 50% of Smith's customers, who had purchased the unloader for installation in silos other than Smith's, had complained of malfunctions resulting from construction characteristics of the silos which impeded the free gravity feed of material to the unloader.

The Court of Appeals stressed three points in affirming a judgment for Smith upon a directed verdict, namely, (1) that 50% customer dissatisfaction was substantial evidence of the reasonableness of Smith's policy of selling the unloader only for use in its own silos, (2) that there was no evidence that anyone other than Smith manufactured a silo or storage bin with the specifications necessary for successful use of the unloader; and (3) that Dehydrating had not sustained the burden of proving any damage to it from Smith's sales practice.

■■ As the court pointed out in the Jerrold case, a defendant claiming a business reason for tie-in sales, as opposed to an attempt to restrain trade, has the burden of proving the existence of facts necessary to support his claim. 187 F. Supp. at 560. The court below found, at least by implication, that appellants had not sustained that burden. We agree. There are no factors here present which are comparable to the facts of either Jerrold or Dehydrating which the courts there felt excused tie-in sales from censure.

■ The licenses used by Switzer are not properly characterized as trademark licenses as appellants would have us do. The quality-control provisions of the Lanham Act, 15 U.S.C.A. § 1051 et seq., relating to trademark licenses, cannot be construed to condone a violation of the antitrust laws. Timken Co. v. United States, 341 U.S. 593, 599, 79 S.Ct. 245, 3 L.Ed.2d 270.

■ Section 271(c) of Title 35 U.S.C.A., does not justify Switzer's label licensing program as appellants contend. That section applies to components of a patented combination which are "not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C.A. § 271(c). Switzer's label licenses tied sales of its materials to the Switzer patents despite the fact that the materials were suitable for substantial noninfringing uses. The trial court found that the label licenses had the effect of restraining trade and fostering a Switzer monopoly in the daylight fluorescent industry. No reason is apparent of record to disturb that finding.

Indeed, appellants' argument on Section 271(c) depends largely upon a misconstruction of the statute, namely, that the Act constitutes a legislative vacation of the rule of the Mercoid and other cases that the monopoly of a combination patent extends only to the totality of the combination, and cannot be asserted as a monopoly upon the separate component elements of the combination. That rule was reaffirmed and applied in the recent case of Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592, 598 (1961). That case removes all arguable validity of the contention now asserted.

One final contention of appellants upon the question of antitrust violations must be briefly mentioned. An antitrust suit filed by the United States against Switzer, Sherwin-Williams and others was terminated by a consent decree entered by the United States District Court for the Northern District of California on October 22, 1953. Appellants urge that decree in refutation of the findings that Switzer's licensing policies still have the effect of lessening competition in the fluorescence industry.

The consent decrees, entered without a trial of the issues in the government suit, enjoined enforcement of the tie-in features of Switzer's licenses and enjoined appellants from engaging in the type of conduct adjudicated in this case. Appellants argue that they have amended their ways in accordance with the restrictive provisions of that decree. On the other side of the blotter, however, the court below, after a trial of some three weeks' duration, found that appellants were still violating the antitrust laws and that appellants' licensing and trade policies still have the effect of lessening competition in the industry. We cannot say on the record before us that those findings are clearly erroneous.

Appellants next contend that the findings that appellee was damaged by appellants' illegal conduct are not supported by the evidence.

■■■ Appellants' attack is spearheaded by the argument that the evidence does not support finding 28 that the general public was damaged by appellants' conduct, by reason of the fact that the public was deprived of an opportunity to purchase fluorescent materials in a free market not affected by appellants' unlawful practice. We reject that argument upon the record, and we note, also, that the argument is specious even if the finding of public injury were not supported by the record. Congress has determined that public injury is inherent in every monopolistic practice or restraint of trade in violation of the Sherman Act. Klor's, Inc. v. Broadway-Hale Stores, 359 U.S. 207, 211, 79 S.Ct. 705, 3 L.Ed.2d 741. In a treble damages action under the Clayton Act the statutory criteria for recovery are satisfied when a plaintiff has alleged and proved an unlawful restraint of trade and damage to himself growing out thereof. Radiant Burners, Inc. v. Peoples Gas Co., 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358.

■■■ Appellants' argument that the evidence fails to show that appellee's loss of sales which is reflected by the record resulted from appellants' unlawful conduct is rejected for two reasons. First, we will not disturb the findings, made upon conflicting evidence, that appellee's sales were restricted as a result of the unlawful conduct. Secondly, we think appellants' contention rests upon a misconstruction of the law which would make injury compensable under the antitrust laws only if the unlawful conduct found to exist stood alone as the causation of the injury. A violation of the antitrust laws is answerable in treble damages for injury to another by the unlawful act even though other factors may have contributed to the injury. Bigelow v. RKO Radio Pictures, 327 U.S. 251, 264–265, 66 S.Ct. 574, 90 L.Ed. 652; Story Parchment Co. v. Paterson Parchment Co., 282 U.S. 555, 566, 51 S.Ct. 248, 75 L.Ed. 544; Momand v. Universal Film Exchanges, 1 Cir., 172 F.2d 37, 43; William Goldman Theatres, Inc. v. Loew's Inc., D.C.E.D. Pa., 69 F.Supp. 103, aff'd 3 Cir., 164 F.2d 1021.

■■■ The court below found that both this suit and a suit in Ohio against appellee's customers were instituted in furtherance of Switzer's unlawful licensing program and that appellee's expenses incurred in defending its customers is an element of its damages. That finding is supported by the evidence and is correct in legal principle. Clapper v. Original Tractor Cab Co., 7 Cir., 270 F.2d 616, 623–624, cert. denied 361 U.S. 967, 80 S. Ct. 588, 4 L.Ed.2d 547; Kobe, Inc. v. Dempsey Pump Co., 10 Cir., 198 F.2d 416, 424–425, cert. denied 344 U.S. 837, 73 S.Ct. 46, 97 L.Ed. 651. Expenses incurred by appellee in counteracting Switzer's propaganda and threats to appellee's customers were also properly found by the court as an element of appellee's damages. Cf., Maytag Co. v. Meadows Mfg. Co., 7 Cir., 45 F.2d 299, 302, cert. denied 283 U.S. 843, 51 S.Ct. 489, 75 L.Ed. 1452.

■■■ We cannot say that the findings that appellee was damaged by appellants' unlawful conduct are clearly erroneous. The elements of damage found are supported by the record and are elements

authorized by law. The reference of the case to a master for a determination of the amount of damages is a proper procedure. LaBuy v. Howes Leather Co., 352 U.S. 249, 259, 77 S.Ct. 309, 1 L.Ed. 2d 290.

We have considered other contentions of appellants, including the contention that the court erred in dismissing appellants' counterclaim. All are found to have no merit. In appeal No. 13193 the judgment is affirmed.

On the cross-appeal in No. 13194, appellee first contends that the court erred in failing to prohibit Switzer's further use of the trademark Day-Glo, in the manufacture and sale of daylight fluorescent materials. Appellee argues that the record reveals that the demand for "Day-Glo" marked goods was induced, in part, by fear and not by the usual elements of good will which establishes·a trademark. That argument refers to advertisements and representations by Switzer, made in furtherance of its scheme to monopolize the trade, that Day-Glo is "The Mark of Legality in Daylight Fluorescence"; that "The Law is on your Side" when you call for Day-Glo; and that absence of the Day-Glo mark upon fluorescent materials and advertising devices would subject the manufacturer and user to an action for patent infringement. Finally, appellee argues that the mark has an artificial value arising out of appellants' unlawful, coercive conduct which appellants will continue to realize, if permitted to use the mark, because of public identification of the mark as the only lawful mark in the daylight fluorescence industry.

In the light of the whole record, it seems apparent that the "Day-Glo" trademark became, as a result of appellant's unlawful conduct, vested with an artificial value in the fluorescence field over and above the normal incidence of good will. To that extent, appellee's argument does possess logical persuasiveness.

Something more than logical persuasiveness, however, must be shown before a reversal of the court's decision is required. Not the least of the considerations to be taken into account is the drastic nature of the remedy suggested. It seems to us that divestiture of property rights in a trademark, by injunction against the mark's continued use, is a remedy which would seldom commend itself to equity in a private suit under the antitrust laws for injunctive relief and treble damages. Even in the context of suits by the United States to restrain conspiratorial monopolies, divestiture as a remedy is not without proscription. Thus it is stated that a decree should not penalize by divestiture under "the guise of preventing future violations," Hartford-Empire Co. v. United States, 323 U.S. 386, 409, 65 S.Ct. 373, 385, 89 L.Ed 322, and that the harsh remedy of divestiture should not be employed whenever injunctive relief is adequate to prevent continued wrongdoing. Standard Oil Co. of New Jersey v. United States, 221 U.S. 1, 77, 31 S.Ct. 502, 55 L.Ed. 619; dissenting opinion of Mr. Justice Frankfurter, United States v. E. I. Du Pont De Nemours & Co., 366 U.S. 316, 335–364, 81 S.Ct. 1243, 6 L.Ed.2d 318. It seems certain to us that divestiture as a remedy in private antitrust litigation should be even more narrowly proscribed, especially in a case such as this where there is lacking a conspiratorial combine of giant economic units of industry [3] and in which the violations stem from the activities of a single sup-

3. Examples of that type of situation, in which divestiture was decreed, are United States v. E. I. Du Pont De Nemours & Co., 366 U.S. 316, 81 S.Ct. 1243, 6 L.Ed. 2d 318, International Boxing Club v. United States, 358 U.S. 242, 79 S.Ct. 245, 3 L.Ed.2d 270, United States v. Paramount Pictures, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260, United States v. American Tobacco Co., 221 U.S. 106, 31 S.Ct. 632, 55 L.Ed. 663, Standard Oil Co. of New Jersey v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 and Northern Securities Co. v. United States, 193 U.S. 197, 24 S.Ct. 436, 48 L.Ed. 679.

plier of fluorescent materials and its officer-stockholders.

Appellee attempts to support its position by its reference to cases involving conspiratorial combines of large economics forces adjudicated in government antitrust suits. International Boxing Club v. United States, 358 U.S. 242, 79 S.Ct. 245, 3 L.Ed.2d 270; United States v. Paramount Pictures, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260; United States v. Crescent Amusement Co., 323 U.S. 173, 65 S.Ct. 254, 89 L.Ed. 160. That reference assumes an analogy which does not exist. A distinction must be drawn between the conspiracy cases, in which divestiture as a remedy has been considered necessary to restore competition, and this case in which competition may be restored by injunction, and divestiture could only remove a residue of benefit which may yet enure to Switzer from its use of the Day-Glo mark.

We have found no reported case of the Supreme Court which would authorize divestiture as a remedy in the situation at hand, and we could not require divestiture in the absence of convincing reasons why that remedy is necessary to prevent continued violations of the antitrust laws. It is apparent that the court below felt that continued violations of law could be prevented without enjoining the continued use of the "Day-Glo" trademark. Its decree was drafted accordingly, upon its finding that the excessive claims made by appellants of a monopoly in the fluorescence field were made in good faith without a conscious purpose to violate the antitrust laws. We cannot say that that finding is clearly erroneous or that the decree, formulated by the court to meet the adjudicated exigencies of the case, is not a valid exercise of the large discretion with which the court was vested. E. g., International Salt Co. v. United States, 332 U.S. 392, 400–401, 68 S.Ct. 12, 92 L.Ed. 20; United States v. E. I. Du Pont De Nemours & Co., 353 U.S. 586, 607–608, 77 S.Ct. 872, 1 L.Ed.2d 1057.

Finally, appellee contends that finding 29 should be made more specific. The court found that appellee has been directly damaged by Switzer's licensing program in respects enumerated in that finding "and possibly in others". Appellee contends that the finding, as cast, is ambiguous, and that it should include a specific finding that appellants' unlawful practices forestalled appellee's normal growth in the industry.

 We think it unnecessary to disturb that finding. The conclusions of law and the decree do not purport to limit the scope of inquiry upon the trial as to the amount of damages. The cause is referred to the master to ascertain and report an account of "the damages suffered." Since appellee is not restricted in the scope of its proof before the master, it has no cause to complain that finding 29 might have been more specifically cast.

The judgment is affirmed on both the appeal and the cross-appeal.